ADES, APPELLEE, *v.* ADES, APPELLANT.

488

(No. 6143—Decided June 15, 1942.)

*Messrs. Steer, Strauss & Adair,* for appellee.
· *Mr. C. Gordon Gutting* and *Mr. George E. Kearns,* for appellant.

MATTHEWS, P. J. Two causes of action were set forth in the plaintiff's amended petition. In the first, the plaintiff alleged that on June 24, 1940, she recovered a judgment in the Supreme Court of the state of New York against the defendant awarding her $50

per week, payable weekly, from that date henceforth for alimony for her support and maintenance during her natural life and the further sum of $25 per week, payable weekly, for the support of their son Alan Ades, so long as he should live and until he attained the age of 21 years. She also alleged that the defendant had failed to make or tender any payment as ordered in such judgment and that there was due and owing to her under such judgment the sum of $1,950. The second cause of action was for alimony for the support of herself and the son of the marriage which she alleged still subsisted.

The defendant, after admitting that he was married to the plaintiff on the date alleged by her and that the issue of the marriage was the one son as alleged, denied generally the other allegations.

The case came on for trial upon the issues raised by the allegations of the first cause of action and the defendant's denial thereof. The court instructed the jury to return a verdict for the plaintiff, overruled the defendant's motion for a new trial and rendered judgment on the verdict for $1,950 and costs. That is the judgment appealed from.

At the trial, the plaintiff introduced a certified copy of the judgment rendered in her favor by the Supreme Court of New York, county of New York, in an action for permanent separation from bed and board, and for maintenance for herself and the minor son of the marriage. The certification was by the clerk of court alone, but no objection was made to its introduction on the ground that it was not certified in accordance with the act of Congress or on any other ground. This copy supported the allegations of the plaintiff's amended petition, but it shows that the only service of notice of the pendency of the action was made by delivering a summons and a copy of the complaint to the defendant personally in the state of Indiana, and

that the judgment was rendered by default upon his failure to appear and answer. The plaintiff testified as to the nonpayments of the weekly installments.

The defendant testified that he had been a resident of Indiana from 1933 to 1936, that he was granted a divorce in 1936 by the Circuit Court of Jennings county, state of Indiana. A copy of this divorce decree was introduced without objection, although it was not certified by the judge and clerk as required by the act of Congress.

The copy shows that this decree was rendered on default for answer or demurrer after service by publication to the defendant as a nonresident of the state.

It is urged as error that, independently of all other reasons, the judgment of the Supreme Court of New York was not entitled to the "full faith and credit" of Article IV of the United States Constitution, because the copy thereof introduced in evidence was not authenticated as required by the act of Congress and that such authentication is a *sine qua non* to the application of the constitutional provision.

It is true that as a part of the federal constitutional provision in Article IV, it is provided that "Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof"; and it is also true that Congress has prescribed by general laws that judicial records "shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form." Title 28, Section 687, U. S. Code.

Certainly, by reason of this constitutional provision and this act of Congress, the exclusion of any judicial record of the judgment of a sister state, so authenticated, would be reversible error. But the act of Con-

gress does not provide that its method shall be the exclusive method by which a state court shall determine the existence of the judgment of a court of a sister state, nor that a state court may under the Constitution ignore the existence of such a judgment, when it is admitted in the pleadings, or in open court, either expressly or tacitly, by allowing the court to consider some other method of proof as sufficient, without interposing an objection thereto.

As stated by Chief Justice Marshall, "We must never forget it is a constitution we are expounding." It would be a strange conception that men engaged in the sublime purpose of laying the broad foundations of a nation they were engaged in creating should concern themselves with a particular method of proof. The language of the Constitution indicates no such purpose. Both the Constitution and the act of Congress disclose only an intent to provide a method, but show no intent to make that method an exclusive one.

We suppose the rule runs in all jurisdictions that a litigant must make known, at the earliest opportunity, his objection to incompetent evidence. 39 Ohio Jurisprudence, 653, Section 78. It is too late when raised for the first time in a reviewing court. Congress has indicated no intention to abrogate the salutary rule against taking advantage of invited error.

It is next objected that the certified copy does not show that the court had jurisdiction of the subject-matter.

In *Adam* v. *Saenger,* 303 U. S., 59, 62, 82 L. Ed., 649, 58 S. Ct., 454, the court held that if the judgment appeared on its face to be a "record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence or by the record itself." This record does not disprove jurisdiction over the subject-matter. The question here is whether it appears to be the record

of a court of general jurisdiction. It is noted that the notice of the final hearing at which this judgment was rendered indicates that the judgment rendered would. be a finality and would award to the plaintiff such relief as "to the court may seem just and proper," and the judgment actually entered provided for a. separation forever from bed and board and for alimony "for her support and maintenance during her natural life," etc. The record contains many indicia of a. court of general jurisdiction.

However, in Ohio this record is helped by the provision of Section 12102-31, General Code, under which courts in Ohio are required to take judicial notice of the statutory law of sister states. The record read in the knowledge of the New York constitutional and statutory law leaves no doubt that the Supreme Court of New York for New York county is a court of general jurisdiction and that it had jurisdiction of the specific subject-matter involved in this action for separation and alimony. Section 1, Article VI, Constitution of New York.

The more serious, and it seems to us the fatal objection to this record of the proceeding in the Supreme Court of New York, is that it shows upon its face that the court had no jurisdiction to render a personal judgment. The record recites that the service of summons was upon the defendant in the state of Indiana. It has been decided many times in many jurisdictions that a personal judgment rendered upon such service is void in the state in which it is rendered, and, of course, it could have no greater validity in any other state.

In 12 American Jurisprudence, 290, Section 595, the rule is stated that:

"When the action is purely *in personam* and a personal judgment is sought, there must, subject to limitations subsequently mentioned, be personal service

within the jurisdiction. A judgment *in personam* against a nonresident cannot be rendered unless he enters his appearance or consents to a substituted service; such a judgment is devoid of validity within as well as outside the state in which it is rendered. \* \* \* Personal service on the defendant outside the jurisdiction of the court will not suffice for this purpose.''

An attempt to bind a nonresident defendant by a judgment *in personam* upon constructive service or by substituted service outside the state lacks due process of law and violates the 14th Amendment to the United States Constitution. See also: *Freeman* v. *Alderson*, 119 U. S., 185, at 188, 30 L. Ed., 372, 7 S. Ct., 165; *Closson* v. *Closson,* 30 Wyo., 1, 215 P., 485, 29 A. L. R., 1371; Annotation to *Stallings* v. *Stallings,* (127 Ga., 464), 9 L. R. A. (N. S.), 593; and *Pennoyer* v. *Neff,* 95 U. S., 714, at 723, 24 L. Ed., 565.

This general principle has been frequently applied to proceedings for alimony. In 17 American Jurisprudence, 580, Section 764, it is said:

''The enforcement of a foreign decree for alimony raises questions different from those concerned with the validity of a foreign divorce decree. So far as such an action relates to alimony and costs it is a proceeding *in personam.* No judgment for alimony which has the effect of a personal judgment can be rendered against a nonresident defendant served only by publication or by service outside the state, in other words, without personal jurisdiction of the defendant. The courts have consistently refused to enforce a foreign decree for alimony and costs where such decree is against a nonresident party to the divorce action who has not appeared in the action or been served with process in the state rendering the decree.''

Counsel also urge that the ''full faith and credit'' clause of Article IV of the United States Constitution

would not, in any event, apply to this decree because no divorce was granted at the time. It seems to us that whether a divorce is granted is important only in determining whether a final judgment has been rendered. It is only final judgments that must be given full faith and credit. The alimony awarded in this case was granted in a decree separating the parties forever and was a provision for the wife's support during her natural life without any reservation of power to modify either as to prospective installments or those that had accrued. It seems to be true that by the laws of New York the parties could by agreement terminate the provision for separation and alimony and restore the marital relation, but that power exists over judgments of undoubted finality. A vested right may be transferred or surrendered, but that results from the exercise of ownership and not from any defect in the right. A consideration of the cases of *Armstrong* v. *Armstrong,* 117 Ohio St., 558, 160 N. E., 34, and *Gilbert* v. *Gilbert,* 83 Ohio St., 265, 94 N. E., 421, and 90 Ohio St., 417, 108 N. E., 1121, leads to the conclusion that had the court obtained jurisdiction of the person of the defendant, the judgment would have had the finality to bring it within Article IV of the United States Constitution, and to entitle it to full faith and credit in Ohio courts, but lacking jurisdiction of the person of the defendant, the attempt by the Supreme Court of New York to render a personal judgment was void in that state, and, of course, could have no greater validity elsewhere.

For these reasons, the judgment is reversed and final judgment is rendered for the defendant.

*Judgment reversed.*

Ross, J., concurs.