LITSINGER SIGN CO., INC., APPELLEE, *v.* THE AMERICAN SIGN CO., INC., APPELLANT.

2

(No. 40013—Decided June 28, 1967.)

4

*Messrs. Foiles & Seaman* and *Mr. Robert R. Lowery,* for appellee.

*Mr. Joseph A. Brant* and *Mr. Sidney C. Brant,* for appellant.

O'NEILL, J. In the instant case, this court must determine the effect to be given to the Maryland default judgment in the Ohio courts.

The judgment of a sister state's court, which is entitled to such full faith and credit as it would receive in the courts of the state in which it was made, may be collaterally attacked if the assertion of jurisdiction over the defendant violated the due process clause of the Fourteenth Amendment. *Adam* v. *Saenger* (1938), 303 U. S. 59, 62, 68; *McGee* v. *International Life Ins. Co.* (1957), 355 U. S. 220, 222; *Van Wagenberg* v. *Van Wagenberg* (1966), 241 Md. 154, 160, 172, 173, 215 A. 2d 812.

But even if jurisdiction could have been constitutionally assumed, the judgment is open to collateral attack where the sister state's internal law has not authorized the court in question to exercise subject matter or personal jurisdiction to the full constitutional extent, and, under the law of such state, the judgment is void. *Treinies* v. *Sunshine Mining Co.* (1939), 308 U. S. 66, 78; *Van Wagenberg* v. *Van Wagenberg, supra,* at 160, 161; Restatement of the Law 2d, Conflict of Laws, Ch. 4, Introductory Note, 39 and 40 (Tentative Draft No. 3, 1956); Restatement of the Law, Judgments, Section 14, comment *b.* See *Hopper* v. *Nicholas* (1922), 106 Ohio St. 292, 294, 140 N. E. 186.

The questions concerning Maryland law will be considered first, for then it will not be necessary to consider the constitutional questions. See *Greenhills Homeowners Corp.* v. *Greenhills* (1966), 5 Ohio St. 2d 207, 215 N. E. 2d 403.

Preliminary to a determination of Maryland law is a consideration of how Maryland law is to be proved in the Ohio courts. This is a matter of Ohio law. See *Adam* v. *Saenger, supra* (303 U. S. 59). No evidence of Maryland law was made part of the record herein. However, to the extent that a court may take judicial notice of foreign law, the necessity of formal pleading and proof thereof is alleviated, and the court determines the law informally, as in questions of domestic law. Mc-

Cormick on Evidence, Section 323; Sections 2309.29 and 2317.44, Revised Code.

In 1939, Ohio enacted a modified version of the Uniform Judicial Notice of Foreign Law Act, which, in pertinent part, reads as follows:

"Every court of this state shall take judicial notice of the statutes of every state, territory, and other jurisdiction of the United States.

"The court may inform itself of such laws in such manner as it deems proper, and the court may call upon counsel to aid in obtaining such information." Section 2317.44, Revised Code.

Where, as in the instant case, attention has been called to certain statutes by citation in the briefs and argument, the court is bound by the above-quoted section to take judicial notice thereof, although the court might, *sua sponte*, notice such statutes had they not been cited, under the court's statutory discretion to consider such foreign law as it deems proper. See Section 2317.46, Revised Code (interpretation so as to effectuate purpose of uniformity). Compare *Strout, Admr.,* v. *Burgess* (1949), 144 Me. 263, 68 A. 2d 241; *Pine Grove Manor* v. *Director, Div. of Taxation* (1961), 68 N. J. Sup. 135, 171 A. 2d 676; annotation, 23 A. L. R. 2d 1437, 1446 and 1447, Sections 9 and 10.

The foregoing assumes that the reasonable notice provisions of Section 2317.45, Revised Code, have been complied with. The purpose of that section is to assure fairness to the opponent when a party wishes to rely on nonforum law. See 9A U. L. A. 563, Commr. Notes (1965). The statute should then be so interpreted as to prevent prejudice and not to create a trap for the unwary. Section 2317.45, Revised Code, therefore, does not apply when a court exercises its discretion to judicially notice another state's law *sua sponte*. See *Strout, Admr.,* v. *Burgess, supra* (144 Me. 263). But when a party wishes to bring such a law to the court's attention, formally or informally, and thereby bind the court to judicially notice it, there must be reasonable notice to the adverse party. Section 2317.45, Revised Code.

In the instant case, there was reasonable notice, for two reasons. First, the action was on a foreign judgment, where the jurisdiction of the foreign court was called into question. The nature of such a case, as revealed by the pleadings, is suf-

ficient warning that foreign law is to be relied upon. Second, both parties have briefed and argued Maryland law in the Municipal Court, the Court of Appeals and in this court. The parties have, therefore, acquiesced in each other's reliance upon Maryland law.

In addition to those public laws of general application clearly included within the term, "statutes," that term also fairly includes other states' constitutions and rules of procedure having force of law throughout each such state, although such rules were adopted by the highest court of the state rather than its legislature. These materials are usually readily accessible through state codes, and, being of the general nature of public laws, should be judicially noticed. See *Ades* v. *Ades*, 70 Ohio App. 487, 490, 45 N. E. 2d 416 (noticing Constitution of New York).

Because of the omission of the words, "common law," from Ohio's version of the Uniform Act in Section 2317.44, Revised Code (see 9A U. L. A. 553), the problem of judicial notice of the common law of other states is presented. There is apparently no history to determine the reason for this omission, nor has any other state apparently so modified the Uniform Act. See Report of Negligence Law Committee, Ohio State Bar Association, 39 Ohio Bar, No. 41, 1220, issue of October 24, 1966; 39 Ohio Bar, No. 46, 1364, issue of November 28, 1966; 9A U. L. A. 558, n. 11.

Before the passage of the Uniform Act in 1939, the law of sister states was a matter of fact to be pleaded and proved by evidence in Ohio courts. *Ingraham* v. *Hart* (1842), 11 Ohio 255; *Erie Rd. Co.* v. *Welsh* (1913), 89 Ohio St. 81, 105 N. E. 189, affirmed, 242 U. S. 303; *Freas* v. *Sullivan* (1936), 130 Ohio St. 486, 200 N. E. 639. It was presumed that out-of-state statutes were interpreted as similar Ohio statutes were, in the absence of evidence to the contrary. See *Smith* v. *Bartram* (1860), 11 Ohio St. 690; *Coffinberry* v. *Blakeslee* (1908), 22 C. C. (N. S.) 34, 28 C. D. 462. These rules have been much criticized and modified. See McCormick on Evidence, 696, Section 326; 9 Wigmore on Evidence (3 Ed.), 558, n. 16, Section 2573, and 1964 Supp. (common law modified by statute or decision in approximately 41 states). However, when the General Assembly omitted the reference to "common law" in Section 2317.44, Revised Code,

it did not immutably freeze the development of the law of judicial notice in Ohio as it then existed as to matters not covered by the statute. Rather, the General Assembly expressed a policy of expanded judicial notice. If the General Assembly had wished the Ohio courts not to take judicial notice of any out-of-state cases, it could have expressly so provided. It is a fair inference that, by the omission of the words, *"common law,"* from that section, the General Assembly meant to leave further development of the law of judicial notice of common law to the courts.

A conclusion that judicial notice may be taken of a sister state's statutory and common law is not precluded by Sections 2317.08 and 2317.09, Revised Code, since the method of proving foreign, statutory and unwritten law set forth in such sections is permissive and not mandatory. Nor are *State, ex rel. Safeguard Ins. Co.,* v. *Vorys,* 171 Ohio St. 109, 167 N. E. 2d 910, and *Lyons* v. *Lyons,* 2 Ohio St. 2d 243, 208 N. E. 2d 533, in point. In *Vorys,* the court was faced with a question different from that involved in this case. In *Vorys,* the court was faced with the problem of what to do in the absence of any reference to or information about the law of any other state, whether common law or statute. As has already been pointed out, in such a situation the court had discretion as to whether it would take judicial notice of the foreign law. The court chose not to do so and applied instead the presumption " '* * * that the law' of Ohio 'is the same as the [applicable] law' of any other state whose law might be pertinent * * *.' " In *Lyons* v. *Lyons, supra,* there was a judgment in the trial court on the pleadings. The question of applicable Arizona law was not mentioned in the trial court, the Court of Appeals or this court. At page 244, the opinion stated:

"Further, the applicable law of Arizona was not pleaded and is presumed to be the same as the law of the forum."

There is no reference to this point in the syllabus, and Section 2309.29, Revised Code, specifically provides that " '* * * matters of which judicial notice is taken, need [not] be stated in a pleading * * *.' "

The court's above-quoted statement, therefore, is limited to the facts of that case.

Only two Ohio cases, subsequent to passage of the Uniform

Act, have been found dealing with the particular problem in the instant case, *i. e.*, judicial notice of cases interpreting statutes of which notice may clearly be taken, and those cases reached conflicting results. Compare *Abbott* v. *Industrial Commission* (1946), 80 Ohio App. 7, 74 N. E. 2d 625 (motion to certify overruled, April 30, 1947), with *Conway* v. *Ogier* (1961), 115 Ohio App. 251, 184 N. E. 2d 681. If the courts of Ohio are able to take judicial notice of sister states' statutes, it is illogical that the cases interpreting such statutes may not be noticed. In the instant case, there is no Ohio statute, similar to the Maryland jurisdictional statute relied upon (Section 92 Md. Code Ann.). Therefore, the similar interpretation presumption is of no aid. Yet the matter is obviously not controlled by the common law, which we could assume was similar to Ohio's. The construction of Maryland statutes by the Maryland Court of Appeals should be binding upon this court. See Auerbach, The Long-Arm Comes to Maryland (1966), 26 Md. L. Rev. 13, 23; and *Abbott* v. *Industrial Commission, supra* (80 Ohio App. 7). The courts of Ohio may therefore judicially notice those cases which interpret and construe the relevant statutes of sister states of which our courts take notice. The notice of such cases is subject to the same rules set out in this opinion as relate to the notice of sister-state statutes.

This holding accords with practicality and reason. To require that a party laboriously introduce all the cases interpreting a statute into evidence would largely do away with the benefits of Section 2317.44, Revised Code, which relieves him from introducing the statute into evidence. The concept that another state's law must be proved differently from the forum's law has been characterized as a "deplorable instance of mechanical jurisprudence." McCormick on Evidence 696.

There may be some reason for the rule requiring formal proof of the law of foreign countries, which law may be a completely different system of law than ours, and may be inaccessible or in a foreign language. However, no such reasons exist with regard to the case law interpreting a statute of a sister state, and the courts are protected from being overburdened with determinations of a sister state's possibly unfamiliar law by our holding that the court is not bound to take judicial notice

of out-of-state statutes or the cases interpreting them unless brought to the court's attention by counsel in some way.

Finally, the determination of the effect of the cases interpreting a noticed statute is more properly the function of a judge, who has had training and experience in such matters, than that of a jury, and is in accord with the clear trend of the law in other jurisdictions. See McCormick on Evidence, 688 and 694, Sections 323 and 326.

Appellant states four grounds for its position that the Maryland Court had no jurisdiction under Maryland statutes. These grounds are (1) that appellant was not doing business in Maryland, (2) that the contract in question was not made in Maryland, (3) that appellant did no acts in Maryland sufficient to confer jurisdiction, and (4) that appellant did not submit itself to Maryland's jurisdiction by appearance.

With regard to the question of "doing business in Maryland," Section 92(a), Article 23, Md. Code Ann., provides that:

"Every foreign corporation doing intrastate or interstate foreign business in this state shall be subject to suit in this state by a resident * * * (1) on any cause of action arising out of such business, and (2) on any cause of action arising outside of this state."

Whether the general language of a "doing business" statute authorizes service in a certain case is a matter of the particular state's interpretation of its statute. *Gkiafis* v. *Steamship Yiosonas* (1965), 342 F. 2d 546, 550.

The United States Court of Appeals, Fourth Circuit, held, in the *Gkiafis case, supra,* and *Kahn* v. *Maico Co.* (1954), 216 F. 2d 233, 237, that the Maryland Court of Appeals has equated Maryland's statutory "doing business" test with the federal constitutional due-process test.

However, in *Gilliam* v. *Moog Industries, Inc.* (1965), 239 Md. 107, 210 A. 2d 390, a case decided after *Gkiafis,* the Maryland Court of Appeals held that activities properly characterized as mere "solicitation of business" did not amount to "doing business" within the meaning of the Maryland statute. Yet, it is clear that jurisdiction *may constitutionally* be based upon *regular solicitation of business only.* See *International Shoe Co.* v. *Washington* (1945), 326 U. S. 310; 9B U. L. A. 310 and 312,

Section 103(a)(4); Auerbach, The "Long Arm" Comes to Maryland, *supra* (26 Md. L. Rev. 23, 33 and 34).

The Maryland test for "doing business," as set out in *Chesapeake Supply & Equipment Co. v. Manitowoc Engineering Corp.* (1963), 232 Md. 555, 562, 194 A. 2d 624, requires that the foreign corporation transact "some substantial part of its ordinary business" in the state. However, the federal Constitution does not require that the transaction of a "substantial part" of a foreign corporation's ordinary business be within the state for a state court to acquire jurisdiction over the corporation in causes of action arising out of the corporation's contacts with the state. A single contact may be enough. *McGee v. International Life Ins. Co., supra* (355 U. S. 220), and cases cited therein with approval; *Smyth v. Twin State Improvement Corp.* (1951), 116 Vt. 569, 80 A. 2d 664 (tort arising out of single transaction); and *Compania de Astral, S. A. v. Boston Metals Co.* (1954), 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372 (dissent), certiorari denied, 348 U. S. 943.

Finally, the Maryland Legislature has indicated that the broadest possible interpretation of "doing business" in Section 92(a) was not intended when it used broader language in four other Maryland statutes. Compare Maryland Code Ann., Article 66½, Section 115; Article 75, Section 78; Article 23, Section 92(d); Article 75, Section 96(a); *Rosenberg v. Andrew Weir Ins. Co., Ltd.* (D. C. Md. 1957), 154 F. Supp. 6, 10; Auerbach, *supra* (26 Md. L. Rev. 13), at pages 33, 34; *Compania de Astral, S. A. v. Boston Metals Co., supra* (205 Md. 237), at page 259.

Maryland's "doing business" jurisdictional statute is thus not as broad as the Maryland Constitution permits. Rather, it has been interpreted as a relatively narrow grant of jurisdiction in such cases as *Gilliam v. Moog Industries, Inc., supra* (239 Md. 107); *Chesapeake Supply & Equipment Co. v. Manitowoc Engineering Corp., supra* (232 Md. 555); *G. E. M., Inc., v. Plough, Inc.* (1962), 228 Md. 484, 180 A. 2d 478; and *Feldman v. Thew Shovel Co.* (1957), 214 Md. 387, 135 A. 2d 428. In all the cited cases the defendant was held not to be "doing business" in Maryland, yet in each case the defendant had much more substantial contact with Maryland than did American in the instant case.

· Furthermore, if not within the letter, the instant case is certainly within the spirit of the "isolated transaction" section of Maryland's corporation law, which declares that, for the purposes of such law, "conducting an isolated transaction not in the course of a number of transactions of a like nature" shall not constitute doing *intrastate* business in Maryland. Section 88(b)(6), Article 23, Md. Code Ann.

The instant transaction is clearly an isolated transaction within the meaning of the statute, as all American's contacts with Maryland related to a single contract. *Compania de Astral, S. A.* v. *Boston Metals Co., supra* (205 Md. 237), at pages 244 and 245. The court, by failing to distinguish between intrastate and interstate business, in referring to the "one transaction" exemption from suit, indicated further that this limitation applies also to corporations doing only interstate business in Maryland. *Ib.,* at page 258. See *Gkiafis* v. *Steamship Yiosonas* (D. C. Md. 1963), 221 F. Supp. 253, 257, reversed on other grounds, *Gkiafis* v. *Steamship Yiosonas, supra* (342 F. 2d 546). See also Auerbach, *supra* (26 Md. L. Rev. 13), at page 34, indicating that the isolated transaction rule is implicit in the concept of "doing business," and Auerbach, *Ib.,* at 22, n. 53, citing early Maryland cases applying the rule.

Litsinger argues that it was acting as defendant's agent in erecting the sign in Maryland. It is not apparent how Litsinger could escape the isolated-transactions rule by this argument, but even if it could, the facts appearing in the record do not establish sufficient control to constitute an apparent independent contractor the agent of the foreign corporation; hence, defendant was not doing business in Maryland by agent. See *White* v. *Caterpillar Tractor Co.* (1964), 235 Md. 368, 201 A. 2d 856; *Thomas* v. *Hudson Sales Corp.* (1954), 204 Md. 450, 105 A. 2d 225.

In view of the foregoing, it must be concluded that defendant was not "doing business" in Maryland within the meaning of Section 92(a), Article 23, Md. Code Ann.

The next question is whether the Maryland court lacked jurisdiction under the Maryland Code (Section 92(d), Article 23) on the ground that the contract was not made in Maryland. That subsection reads as follows:

"Every foreign corporation shall be subject to suit in this

state * * * on any cause of action arising out of a contract made within this state or liability incurred for acts done within this state, whether or not such foreign corporation is doing or has done business in this state.''

With regard to the ''contract made within this state'' portion of this statute, the Maryland cases, taken as a whole, indicate that the contract is considered made where the last act required to make it binding occurs. *Compania de Astral, S. A.* v. *Boston Metals Co., supra* (205 Md. 237); *Chesapeake Supply & Equipment Co.* v. *Manitowoc Engineering Corp., supra* (232 Md. 555); *Cole* v. *Randall Park Holding Co.* (1953), 201 Md. 616, 622 and 623, 95 A. 2d 273; *Park Beverage Co.* v. *Goebel Brewing Co.* (1951), 197 Md. 369, 79 A. 2d 157; *Pan American Consulting Co., Inc.,* v. *Corbu Industrial, S. A.* (1959), 219 Md. 478, 150 A. 2d 250. Neither party here disputes the foregoing. However, the parties differ as to (1) where an acceptance by correspondence takes place for the purposes of Section 92(d), and (2) what is the ''final act'' making the agreement binding in this case.

Concerning the first point, Litsinger contends that the recent Maryland cases interpreting Section 92(d) have established that an acceptance by letter is effective where it is received, rather than where it is posted, contrary to the general rule of contracts. See 1 Corbin on Contracts, Section 78; 1 Williston on Contracts (3 Ed.), 265 and 358, Sections 81 and 97; Restatement of the Law, Contracts, Sections 64 and 66; 11 Ohio Jurisprudence 2d, 281, Section 38.

A close examination of the Maryland cases relied upon indicates that, contrary to Litsinger's contention, the Maryland Court of Appeals, for this purpose, looks to see where the contract was made under the technical rules of contract, and does not strain these rules to find jurisdiction in Maryland. See, *e. g.,* *Chesapeake Supply & Equipment Co.* v. *Manitowoc Engineering Corp., supra* (232 Md. 555); *Cole* v. *Randall Park Holding Co., supra* (201 Md. 616).

Although no Maryland state court case was found directly basing jurisdiction upon the usual rule that a mailed acceptance is effective when and where posted, there are two federal District Court cases so holding unequivocally. In each of those

cases the court was engaged in testing the validity of service under Maryland law. See *Ericksson v. Cartan Travel Bureau, Inc.* (D. C. Md. 1953), 109 F. Supp. 315, 317; *Rosenberg v. Andrew Weir Ins. Co., Ltd., supra* (154 F. Supp. 6).

It has not been argued here that the acceptance was by an unauthorized means, in which case acceptance would be effective only upon receipt. However, it is fairly inferable from the record that mail was a reasonable and impliedly authorized means of acceptance, hence the acceptance was effective where posted. See 1 Corbin on Contracts, 339, Section 78; 1 Williston on Contracts (3 Ed.), Section 83.

It is thus clear that a contract is considered made for the purpose of Section 92(d) where it would be made under typical contract rules, including the rule that an acceptance authorized to be by mail is effective when and where posted.

Concerning the "final act" making the agreement here involved a binding contract, Litsinger contends that there was no contract until it performed the services in Maryland. However, American contends that its purchase order sent from Ohio constituted a valid acceptance, and the contract was, therefore, made in Ohio.

There having been cited no Maryland statutes controlling the matters of contract formation at issue, this court has discretion to presume that Maryland common law controls and is the same as Ohio common law. *Heater v. Mittendorf, Exrx.* (1943), 72 Ohio App. 4, 8, 50 N. E. 2d 559; 20 American Jurisprudence 73, Evidence, Section 48; 9 Wigmore on Evidence (3 Ed.), Section 2536.

Contrary to Litsinger's contentions, it is reasonably clear from the stipulation that the parties intended to make a bilateral contract with the offer being accepted by American's purchase order posted in Cincinnati and binding both parties from such acceptance, rather than a unilateral contract acceptable by performance only.

In the instant case, it is not necessary to determine the terms of the contract or defendant's liability thereunder. American's default in Maryland settled the merits. *Cf.* Note, 26 Ohio St. L. J. 158, 159, 160 (1965) (concerning similar lack of necessity of determining ultimate liability in tort). If it is merely

established that the communications of the parties added up to a valid bilateral contract, the foregoing establishes that such contract was made in Ohio, not Maryland.

It is settled law that if the parties' manifestations taken together as making up the contract, when reasonably interpreted in the light of all the circumstances, do not enable the court to determine what the agreement is and to enforce it without, in effect, "making a contract for the parties," no enforceable obligation results. See 1 Corbin on Contracts, 394 and 398, Section 95; 1 Williston on Contracts (3 Ed.), Section 37; 11 Ohio Jurisprudence 2d, 283, Contracts, Section 42.

If it is found that the parties intended to be bound, the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the paries have left, and reach a fair and just result. 1 Corbin on Contracts, 400 to 406, Section 95; 1 Williston on Contracts (3 Ed.), 110 and 111, Section 37. Even though American's purported acceptance stated the price for Litsinger's services "to be determined," this does not indicate a mere "agreement to agree" as to an essential term of the contract. Compare *General Motors Corp.* v. *Keener Motors, Inc.* (1952), 194 F. 2d 669, 63 Ohio Law Abs. 392. Rather, it merely refers to Litsinger's offer to do the work for "ordinary industry prices," a way of filling a blank on its purchase order in the absence of a specified liquidated amount.

Further, the term, "ordinary industry prices," sets a standard ascertainable by proof, which would permit enforcement of the parties' express contract. 1 Corbin on Contracts, 408, 409 and 433, Sections 95 and 98 (recourse to market—a standard usually enforceable). See 1 Williston on Contracts (3 Ed.), 133 and 134, Section 41, n. 17; *Ellis* v. *Victor Electric Products, Inc.* (1949), 85 Ohio App. 170, 88 N. E. 2d 275 (bonus based upon "increased production"). There was a valid and enforceable contract here, and the last act necessary to make that contract took place in Ohio. Thus, the Maryland court could obtain no jurisdiction under the "contracts made within the state" portion of the Maryland Code Section 92(d), Article 23.

It is argued further that the Maryland court had no jurisdiction under the language of Section 92(d), quoted above, hav-

ing to do with "causes of action arising out of liability incurred for acts done" within Maryland.

It is doubtful that the language of that statute contemplates cases like this. It does not appear from the stipulation that any of American's agents or products were ever in Maryland. The statutory language seems to require, however, that the foreign corporation has done acts in Maryland which result in the liability sued upon. Compare *Platt Corp.* v. *Platt* (1966), 17 N. Y. 2d 234, 217 N. E. 2d 134; *Longines-Wittnauer Watch Co.* v. *Barnes & Reinecke, Inc.* (1965), 15 N. Y. 2d 443, 209 N. E. 2d 68. Here, it appears that American's liability, if any, arises from its act of acceptance in Ohio, and not from Litsinger's act of performance in Maryland. Upon proof of the contract, American would be *prima facie liable* for the amount due thereunder, but it could *defend* on the basis of nonperformance. But no matter what acts Litsinger did, American would not have been liable to pay therefor without a contract to do so (absent restitutionary recovery—and there is no claim of that here). By way of analogy, Litsinger could not claim, under the "doing business" portion of Section 92, that jurisdiction existed in Maryland by virtue of its own doing of business there.

There is apparently no legislative history as to the meaning of this section, *Johns* v. *Bay State Abrasive Products Co.* (D. C. Md. 1950), 89 F. Supp. 654, but the existing cases are contrary to plaintiff's contention.

The only Maryland Court of Appeals case found construing the "acts done" language since its passage in 1937 makes only brief reference to such language. *Cole* v. *Randall Park Holding Co., supra* (201 Md. 616). While not direct authority contrary to Litsinger's position in this case, certain portions of the court's language indicate that it thought the question was what the garnishee had done in Maryland, not what the individual defendants had done. See, also, *Johns* v. *Bay State Abrasive Products Co., supra* (89 F. Supp. 654), the only case found in which jurisdiction has been held to exist under the statutory language now in question, wherein the court similarly focused its attention on what defendants had done in Maryland.

The only case found which seems to involve directly Lit-

singer's construction of Section 92(d) "acts done" jurisdiction is *Rosenberg* v. *Andrew Weir Ins. Co., supra* (154 F. Supp. 6), also involving amounts due for services rendered in Maryland under an alleged contract. The court said:

"* * * It is probable, as Judge Murray indicated in *Strong* v. *Patapsco & Black Rivers R. R. Co.*, Cir. Ct. Baltimore County, May 10, 1950, Daily Record, August 14, 1950, that the words last quoted were intended to apply only to torts committed in the state by a corporation which thereafter withdrew from the state. Contractual obligations were provided for by other language in 88(d) [identical predecessor of 92(d)], as well as by 88(a) [identical predecessor of 92(a)] and other sections. But in any event the phrase, 'acts done within this state,' as it is used in 88(d) refers to acts done by the defendant and not to acts done by the plaintiff. To construe the language otherwise would extend the applicability of 88(d) quite unreasonably and would raise grave constitutional questions. * * *"

There are additional reasons why the Maryland Court of Appeals would not accept Litsinger's argument in this case. On the record before us, American's only connection with Maryland is a contract not made in Maryland, but which does have a substantial connection with Maryland. See *Maryland National Bank* v. *Shaffer Stores Co.* (1965), 240 F. Supp. 777. Other states explicitly purport to have assumed jurisdiction over contracts "to be performed by either party" in the respective states. See Section 617.3, Iowa Code Ann. (Supp. 1966); Section 303.13, Minn. Statutes Ann. (Supp. 1966); Section 4, Article 2031b, Tex. Civil Statutes Ann.; Section 855, Title 12, Vt. Statutes Ann.; Section 3083, W. Va. Code (1961). At least one of these statutes (Vermont) has been on the books since 1937, yet the Maryland Legislature has not seen fit, while completely revising and re-enacting the Maryland Code three times, to extend the jurisdiction of Maryland courts over contracts "to be performed" and not "made" in Maryland.

The Maryland Court of Appeals has not even indicated that it would seek jurisdiction to the full constitutional extent under Section 92(d). In fact, it has strictly construed the words of the statute and very likely would do so here. Thus, the Maryland court acquired no jurisdiction under the "acts done" portion of Section 92(d).

Lastly, it is contended that American submitted itself to the Maryland court's jurisdiction by sending to the court an unsigned carbon copy of a letter to Litsinger's attorney, asking him to dismiss the action because of lack of jurisdiction of the Maryland court.

Under the full faith and credit clause (Section 1, Article IV, U. S. Constitution), collateral attack on a sister state's judgment is precluded if the defendant appeared in the original action, if such is the effect of the appearance under the original state's procedural law or its doctrine of *res judicata*. *American Surety Co.* v. *Baldwin* (1932), 287 U. S. 156, 166; *Bank of Jasper* v. *First National Bank of Rome, Georgia* (1922), 258 U. S. 112; *Sherrer* v. *Sherrer* (1948), 334 U. S. 343; *Johnson* v. *Muelberger* (1951), 340 U. S. 581; Restatement (2d), Conflict of Laws, Section 82 (Tentative Draft No. 3, 1956), and Section 117(b) (Tentative Draft No. 4, 1957); Developments in the Law, State-Court Jurisdiction, 73 Harvard L. Rev. 909, 991 to 998.

In most states, including Ohio, a special, as opposed to a general, appearance permits defendant to raise the jurisdictional objection without submitting to the jurisdiction of the court, and, therefore, does not preclude collateral attack. Developments in the Law, State-Court Jurisdiction, *supra*, at page 991; 9B Md. Code Ann., Rule 323a. Prior to the adoption of the Maryland Rules, Maryland followed this rule. 2 Maryland Law Encyclopedia, 466 and 468, Appearance, Sections 3 and 4; 5 American Jurisprudence 2d 495, Appearance, Section 21.

Apparently, the rules only make it clear that it is the nature of the claim or defense asserted that controls the type of appearance made, and not the form or label of the pleading in question; the rules do not seem to change the effect of a special appearance. See 9B Md. Code Ann., Rules 124c and 323a; *McCormick* v. *St. Frances de Sales Church* (1959), 219 Md. 422, 149 A. 2d 768. Compare result in *White* v. *Caterpillar Tractor Co., supra* (235 Md. 368), with result in *Walsh, Admr.,* v. *Crouse* (1963), 232 Md. 386, 194 A. 2d 107. See *Bank of Jasper* v. *First National Bank, supra* (258 U. S. 112).

Whatever our doubt as to whether the letter was any kind of an appearance (see exhibit A of the record noting only Litsinger's appearance), it was at most a special appearance. In

*McCormick, supra* (219 Md. 422), the court stated the Maryland test as follows:

"* * * In the instant case the *assertion of defenses on the merits* * * * was an invocation of the jurisdiction of the court * * *. A person who denies that a court has jurisdiction and *asks relief on that ground cannot ask anything of the court which is inconsistent* with the want of such jurisdiction." (Emphasis added.)

Here, the letter itself (record, exhibit B) reveals that the defendant asked nothing whatever of the court, only of the opposite party's attorney, and in addition did not assert any defense or ask any relief in connection with the merits. The letter merely mentions that there is a dispute as to the claim, and asks that *the other attorney* dismiss the case *for lack of jurisdiction.* In Ohio, such a letter could not constitute a general appearance, *Taylor, Admr.,* v. *Victor Equipment Co.* (1948), 84 Ohio App. 236, 81 N. E. 2d 804, and no case has been cited contrary to this position.

Thus, American did not submit itself to the jurisdiction of the People's Court of Baltimore City, nor was the service of summons made upon it outside the state authorized by Maryland law, so that the People's Court had no jurisdiction to render judgment against American.

The judgment of the Court of Appeals, affirming the judgment of the Cincinnati Municipal Court, is, therefore, reversed for the reason that the judgment sued upon was rendered without jurisdiction.

*Judgment reversed.*

Zimmerman, Matthias, Herbert and Brown, JJ., concur.

Rutherford, J., of the Fifth Appellate District, sitting for Schneider, J.

Taft, C J., concurring. I concur in paragraphs one, two and six of the syllabus and in the judgment.

The questions considered in the syllabus and in the majority opinion with respect to the Ohio Uniform Judicial Notice of

Foreign Law Act (Sections 2317.44, 2317.45, and 2317.46, Revised Code) were not raised in either the briefs or in the arguments. As pointed out in the majority opinion, "both parties * * * briefed and argued Maryland law in the Municipal Court, Court of Appeals and in this court" and "have, therefore, acquiesced in each others reliance on Maryland law." Hence, it seems to me that the statements in the majority opinion and in paragraphs three, four and five of the syllabus about Sections 2317.44 and 2317.45, inclusive, Revised Code, represent dicta.

In my opinion, some of those statements are contrary to the intention expressed by the General Assembly in the enactment of those statutes, and others purport to decide questions that are sufficiently doubtful so as to require us to refrain from apparently deciding them now when the questions have not been presented to us for decision.

I am particularly disturbed by paragraph four of the syllabus and by the portion of paragraph three thereof after the word "however," which suggest that a court may exercise its discretion *sua sponte* to judicially notice another state's law. The statute (Section 2317.45, Revised Code) provides that "to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise." Thus, without such notice, a party cannot even "ask" the court to take judicial notice of the law of another state. The statute says nothing about any discretion of the court to either consider or disregard foreign law that the court is not asked to judicially notice. (Contrast Section 2505.21, Revised Code, relating to appellate procedure, which states that "errors not specifically pointed out * * * and separately argued * * * *may* be disregarded, but the court *may* consider and decide errors * * * not assigned or specified," and thus does specifically confer discretion on the court to consider or not consider errors not specifically pointed out and separately argued.)

If, as the majority opinion suggests, Section 2317.45, Revised Code, "should * * * be so interpreted as to prevent prejudice and not to create a trap for the unwary," why should not the court, as well as the opposing party, be prevented from creating such a trap?

Also, the majority opinion states that there is "apparently no history to determine the reason for * * * omission" of the words "common law" from Ohio's version of the Uniform Act in Section 2317.44. On the contrary, there is ample history to indicate that reason. Thus, when the Uniform Act was adopted, what is now Section 2317.09 read:

"The common or unwritten law of another state, a territory of the United States, or foreign government, may be proved as facts by parol evidence. Books of reported cases adjudicated in its courts also may be admitted as presumptive evidence of such law."

The part of the Uniform Act that is now the first sentence of Section 2317.44, Revised Code, was Section 1 of House Bill 320 in the 93rd General Assembly and, as introduced, it read, so far as pertinent:

"Every court of this state shall take judicial notice of the common law and statutes of every state * * *."

The words "the common law and" were stricken by an amendment before the bill passed the House (93 House Journal 932). They were reinserted by a Senate Committee which also amended the bill to strike the lines of the bill containing a section that read "all acts or parts of acts inconsistent with the provisions of this act are hereby repealed." (93 Senate Journal 666.)

It is quite obvious that both Houses of the General Assembly had by then noticed the apparent conflict between the reference to "common law" in Section 1 of the Uniform Act, and what is now Section 2317.09, Revised Code.

After the Senate again struck "the common law" from the bill as finally enacted (93 Senate Journal 800) and the House concurred in the Senate amendments (93 House Journal 1246), it is quite apparent that the General Assembly intended to prevent judicial notice being taken of the common law of another state, and instead intended to require proof thereof under Section 2317.09, Revised Code, with books of reported cases being admissible as presumptive evidence thereof. See Hallen, The Uniform Evidence Acts (1939), 6 Ohio St. Law Journal 25, 39.

There could be a good reason for such a distinction between

"statutes" and "common law." There can usually be no dispute as to what the words of a statute are. On the other hand, there is often considerable uncertainty as to what a court meant by its decision or the reasons which it gave for that decision.

There is nothing in the words of Section 2317.45, Revised Code, to justify the conclusion expressed in paragraph three of the syllabus that the word "statutes" as used in the Uniform Act as adopted in Ohio should include court rules or constitutional provisions. This problem is specifically covered by a previously existing statute which is now Section 2317.08, Revised Code, making "printed copies of written law enacted by another state" admissible "as presumptive evidence of such law."

RUTHERFORD, J., concurring. I concur in paragraphs one, two, three, four and five of the syllabus and in the judgment.

In addition to the paragraphs of the syllabus indicated and the judgment, I also concur in the findings that under Maryland law the defendant was not doing business in Maryland, that the contract sued upon was made in Ohio, not in Maryland (see *Keco Industries, Inc.*, v. *A F C Industries, Inc.* [4th Cir. 1963] 316 F. 2d 513, where under a reversed set of facts the order was mailed from Maryland to Ohio, and the court found the contract to have been made in Maryland), that the defendant did no acts in Maryland incurring liability to plaintiff, and that the defendant did not submit to the Maryland court's jurisdiction by a general appearance.

Subsection 92 (d), Article 23 of the Maryland Code, reads as follows:

"Every foreign corporation shall be subject to suit in this state * * * on any cause of action arising out of a contract made within this state or liability incurred for acts done within this state, whether or not such foreign corporation is doing or has done business in this state."

It is apparent that the portion reading, "or liability incurred for acts done within this state," pertains to acts arising out of contract, since the subsection pertains to contracts, and tortious acts are separately dealt with in other sections.

Regarding the contract and work performed under the

contract in the instant case, the bill of exceptions, in pertinent part, reads:

"* * * On June 22, 1962, defendant wrote to plaintiff: '* * * give me quote on erecting the letters.' Plaintiff told defendant that it would do the work as per defendant's diagrams at the ordinary industry prices. The last communication before work commenced was the sending by defendant in Cincinnati to plaintiff in Baltimore on July 17, 1962, of purchase order No. 17263 plus a letter of authorization to start work. * * * "

Neither purchase order No. 17263 nor the letter of authorization to start work is contained in the bill of exceptions as exhibits. The bill of exceptions then continues to read:

" * * * Plaintiff performed the work contracted for. *In addition, it did additional work* which in a trial on the merits defendant would claim was unauthorized and uncontemplated and on plaintiff's own initiative. Plaintiff would contend it was necessary to complete the work contracted for. *Plaintiff's invoice No. 6970 dated September 17, 1962, shows that it charged $700* '* * * to install signs as per order, $100 for freight damage and $963.80 for electrical work.' *Defendant paid $700 for the work ordered* and for the freight damages, but refused to pay for the electrical work. * * * " (Emphasis added.)

*Following payment for the work ordered and freight damages,* the plaintiff filed suit in the People's Court of Baltimore, Maryland, to recover the sum of $963.80 for the electrical work and on the judgment obtained commenced the instant action in Ohio.

Had the suit in Maryland been for work specifically ordered and performed in Maryland, we would be confronted with the question of whether the Maryland Legislature did not intend to equate the statutory test of "liability incurred under acts done within this state," having reference to acts done under contract, with the federal constitutional due-process test. The contract having been delivered in Maryland, had the work performed in Maryland by the Maryland contractor been that specified in the order, the further question might arise as to whether due process would preclude entry of judgment against an Ohio corporation by a Maryland court where the recovery

sought was compensation for an act performed in Maryland under the express terms of an executed contract. See *McGee* v. *International Life Ins. Co.*, 355 U. S. 220, 78 S. Ct. 199.

We are not confronted with these questions in the instant case for as stated in the bill of exceptions, the "*defendant paid for the $700 work ordered.*"

Upon the facts of the instant case, where jurisdiction over defendant was attempted to be secured by extraterritorial service by registered mail, where the defendant under Maryland law was not doing business in Maryland, where the contract sued upon was made in Ohio, not in Maryland, where the defendant did no act in Maryland, where there was no act in Maryland done by either the plaintiff or the defendant under the express terms of a contract excepting for which payment in full was made, and where the defendant did not submit to the Maryland Court's jurisdiction by a general appearance, the Maryland Court's judgment against the defendant is void and not enforceable in Ohio.