DECISION AND JUDGMENT ENTRY
{¶ 1} Eleanor Barstow appeals the Athens County Court of Common Pleas' entry enforcing an oral settlement agreement between her and John Wharton. Barstow contends that the trial court erred in enforcing the agreement because there was no meeting of the minds between her and Wharton. Because the record contains sufficient evidence that the parties entered into an agreement and intended to be bound by it, we disagree. Barstow also asserts that the trial court erred in denying her motion for summary judgment and erred in finding that she never withdrew her proposed lease offer. Based upon our finding that Barstow and Wharton entered into a settlement agreement, we find her remaining assignments of error moot. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Barstow owns several rental properties in Athens, Ohio. Wharton owns O.U. Real Estate, III, Inc. In 1998, Barstow and Wharton entered into an agreement pursuant to which Wharton was to act as the agent for several of Barstow's rental properties. Additionally, Wharton leased a commercial space from Barstow for use as his office. That lease provided for rent of four hundred dollars per month, with an increase of five percent annually. In a third document, Wharton leased eight parking spaces for the commercial space from Barstow for one hundred dollars per month.
 {¶ 3} The commercial space needed substantial renovation in order to be suitable for office use. Wharton remodeled the building at his own expense, in exchange for the low rent and, in his understanding, a long-term lease. However, once Wharton completed the renovation of the commercial space, Barstow filed a complaint seeking, among other things, to have the lease with Wharton declared a year to year lease which she could cancel at will. Wharton filed an answer and counterclaim, alleging that Barstow made misrepresentations and fraudulently induced Wharton to remodel her building.
 {¶ 4} Barstow filed a motion for summary judgment, which the trial court denied. The matter proceeded to a bench trial on the morning of February 20, 2001.
 {¶ 5} After the noon recess at trial, the parties informed the court that they had reached a settlement. The following exchange took place on the record between the court and Mr. Frey (Barstow's counsel) and Mr. Eslocker (Wharton's counsel):
 {¶ 6} "BY MR. FREY: [W]e are going to prepare a new lease for the commercial space and, quite frankly, I will prepare the lease and it will be in the format that Mr. Eslocker is familiar with because we are currently negotiating another transaction on the same format but essentially it will be a ten year lease with the lessee having the option to cancel the lease upon six months written notice to the lessor. The parties had previously agreed to a rent schedule and we will maintain that rent schedule, pick it up and maintain,
 {¶ 7} "BY THE JUDGE: That's the $500.00 plus the five percent annually?
 {¶ 8} "BY MR. FREY: Yes and there (sic) in the second or third year of that so we'll pick it up at the, wherever they are right now. It will be a triple net lease meaning that the lessee will be responsible for the maintenance and we're gonna define to maintenance to improve the exterior and need it be adjacent to the office space. It will also provide for insurance to be provided by the lessee * * * and the taxes * * *. The lease will also include the five parking spaces. * * * In addition to that, the Defendant will make a lump sum payment of $4,500.00 to be paid in three equal installments of March 1, May 1, and August 1 of this year. * * *
 {¶ 9} "BY THE JUDGE: What's the $4,500.00 for?
 {¶ 10} "BY MR. ESLOCKER: Settlement, your honor, to state.
 {¶ 11} "BY THE JUDGE: Settlement?
 {¶ 12} "BY MR. ESLCOKER: Settlement of the litigation. Mr. Frey and I will employ many of the standard lease term languages that are typically used in these things.
 {¶ 13} "* * *
 {¶ 14} "BY THE JUDGE: And how bout those eight parking spaces?
 {¶ 15} "BY MR. FREY: And,
 {¶ 16} "BY MR. ESLOCKER: That is settled as well.
 {¶ 17} "BY MR. FREY: That's settled as well.
 {¶ 18} "* * *
 {¶ 19} "BY THE JUDGE: Very good and how, what time frame do I expect to the entry Mr. Eslocker?
 {¶ 20} "BY MR. ESLCOKER: I think the entry would be ready probably by Friday. It may take just a little longer to get all the lease terms together * * *.
 {¶ 21} "* * *
 {¶ 22} "BY THE COURT: Okay so we're looking two to three weeks at the outside I suspect?
 {¶ 23} "BY MR. ESLOCKER: Oh at the outside yeah. I think we both would like to get this thing wrapped up in a week if we can."
 {¶ 24} Both parties acknowledged to the court under oath that they understood the settlement agreement as outlined by their attorneys, and voluntarily entered into the settlement agreement.
 {¶ 25} Mr. Frey mailed the proposed lease to Mr. Eslocker on February 28, 2001. Wharton saw the proposed lease shortly thereafter, but did not sign it immediately because several terms included in the lease were not as he expected. Wharton believed that the proposed lease would be parallel to the terms and conditions of his prior lease with Barstow. In particular, Wharton expected the five percent annual increase on his rent to apply, as it had in the past, only to the $400 rent on the building, not to the additional $100 rent on the parking spaces. Additionally, Wharton believed that in agreeing to a "triple net" lease, he agreed to take on maintenance and taxes, but did not expect to take on responsibility for items such as replacement of the air conditioner and furnace. Mr. Eslocker and Mr. Frey engaged in some negotiations on behalf of their clients on these matters.
 {¶ 26} In mid-March Barstow called Wharton, informed him that she was firing Mr. Frey, and told Wharton to instruct Mr. Eslocker to refrain from contacting and negotiating further with Mr. Frey. Mr. Lavelle filed an appearance as additional counsel with the court on April 6, 2001.
 {¶ 27} In an April 9, 2001 letter to the court, Mr. Lavelle requested that the trial court reschedule the case for trial, as the settlement was never finalized. The trial court held a status conference on May 3, 2001, then filed a journal entry noting that the law requires it to conduct an evidentiary hearing where the existence of a settlement or the meaning of the terms of a settlement agreement are in dispute. The court invited Wharton to file a motion to enforce the settlement agreement so that it could hold a hearing pursuant to Rulli v. Fan Co.
(1997), 79 Ohio St.3d 374, syllabus.
 {¶ 28} Wharton filed a motion to enforce the settlement agreement and construe certain terms of the agreement. Pursuant to Rulli, the trial court held an evidentiary hearing on July 27, 2001. At the hearing, Wharton testified that he believed that he and Barstow reached a settlement on February 20. Wharton also testified that he paid the forty-five hundred dollars due under the settlement to his attorney, but understood his attorney did not tender it to Barstow right away because the lease was still being negotiated. However, by May 1, 2001, both the March and the May installments of $1,500 had been tendered to Barstow. Wharton tendered the remaining $1,500 to Barstow, due on August 1, prior to the July 27 hearing.
 {¶ 29} Barstow testified that she believed that time was of the essence in the February 20 agreement. Barstow felt that Wharton's failure to tender his first payment by March 1, 2001, and his failure to agree to the proposed lease prepared by Frey until the July 27 hearing, evinces that no meeting of the minds occurred.
 {¶ 30} The trial court found that Barstow never withdrew or rescinded her proposed lease when disagreements regarding the lease terms arose. Because Wharton ultimately agreed to all terms of the lease, the court determined that a settlement was reached between the parties. Additionally, the court found that Wharton's initial failure to tender $1,500 to Barstow by March 1, 2001, may have constituted a breach of the settlement agreement, but did not evince the lack of an agreement. Accordingly, the trial court entered judgment enforcing the settlement agreement.
 {¶ 31} Barstow appeals, asserting the following assignments of error:
 {¶ 32} "I. The trial court committed prejudicial error when it denied plaintiff's motion for summary judgment.
 {¶ 33} "II. The trial court committed reversible error in enforcing a purported settlement agreement where there was no meeting of the minds concerning such agreement and time was of the essence, even when the party moving to enforce the settlement agreement against the other party finally, after two (2) court hearings and five (5) months of arguing and delay, agreed to the other party's original understanding of the settlement agreement.
 {¶ 34} "III. The trial judge erred when he found there was no evidence that plaintiff Barstow withdrew her initial understanding of an attempted settlement agreement."
 II. {¶ 35} In her second assignment of error, Barstow contends that the trial court erred in enforcing the settlement agreement because no meeting of the minds ever existed.
 {¶ 36} The standard of review applicable to a ruling on a motion to enforce a settlement agreement depends upon the issues disputed, and may present a mixed question of law and fact. See Westbanco BankBarnesville v. Balcar (Dec. 21, 2001), Belmont App. No. 00-BA-36. If the dispute is an evidentiary one, we will not reverse the trial court's determination that a settlement exists as long as the trial court had sufficient evidence before it as to the terms of the settlement.Chirchiglia v. Ohio Bur. of Workers' Comp. (2000), 138 Ohio App.3d 676,679. If the dispute is a question of law, we must employ de novo review to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. Continental W. Condominium Owner's Assn. v. Howard E. Ferguson,Inc. (1995), 74 Ohio St.3d 501, 502.
 {¶ 37} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. Continental W. at 502. Settlement agreements are highly favored in the law. Wright v. Weyandt
(1977), 50 Ohio St.2d 194, syllabus. When parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes a binding contract. Spercel v. Sterling Industries, Inc.
(1972), 31 Ohio St.2d 36, paragraph one of the syllabus. As a result, unless a party has moved to set aside such an agreement, the trial court can enter judgment consistent with that agreement. Id. at paragraph two of the syllabus.
 {¶ 38} An oral settlement agreement is enforceable with the same degree of formality and particularity that applies to the enforcement of a binding contract. Spercel at 39. Thus, a settlement agreement cannot be unilaterally repudiated. Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34, syllabus. "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though * * * the agreement is of binding force." Spercel at 40. Rather, it can only be set aside for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence.Mack at syllabus.
 {¶ 39} "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, syllabus.
 {¶ 40} A court cannot make a contract for the parties or force them to settle. Listinger Sign Co. v. American Sign Co. (1967),11 Ohio St.2d 1, 14. If the court cannot determine from the parties' manifestations as reasonably interpreted in the light of all the circumstances, what the agreement is or how to enforce it, no enforceable obligation exists. Id., citing 1 Corbin on Contracts, 394 and 398, Section 95; 1 Williston on Contracts (3 Ed.), Section 37; 11 Ohio Jurisprudence 2d 283, Contracts, Section 42. However, "[i]f it is found that the parties intended to be bound, the court should not frustrate this intention, if it is reasonably possible to fill in some gaps that the parties have left, and reach a fair and just result." Id., citing 1 Corbin on Contracts, 400 to 406, Section 95; 1 Williston on Contracts (3 Ed.), 110 and 111, Section 37. See, also, Oglebay Norton Co. v. Armco,Inc. (1990), 54 Ohio St.3d 231, 236. In some instances, even where the price is left "`to be determined,' this does not indicate a mere `agreement to agree' as to an essential term of the contract." Listinger
at 14; Oglebay at 236.
 {¶ 41} In this case, the parties dispute whether a settlement agreement exists, and dispute the meaning of the terms of a settlement agreement if one does exist. In accordance with Rulli, the trial court held an evidentiary hearing to resolve these questions.
 {¶ 42} At the hearing, Wharton testified that he and Barstow intended to be bound by the agreement announced on February 20, and that he took the delay in signing the lease to be due merely to a dispute regarding the meaning of the terms of the settlement agreement. Specifically, Wharton disputed the meaning of the term "triple net" and whether the five-percent increase applied to the entire lease, or just to the portion of the lease applying to the office space.
 {¶ 43} Barstow testified that she believed no settlement arose from the February 20 hearing because of events that occurred after the hearing. Specifically, Barstow stated that because Wharton did not sign the lease in a timely manner and did not pay her $1,500 by March 1, 2001, she had to incur the costs of hiring an additional attorney, Mr. Lavelle. Barstow testified that she believed time was of the essence when she agreed to settle with Wharton, and that his failure to perform in a timely manner illustrates that no settlement agreement exists.
 {¶ 44} The trial court found that the evidence indicated that the parties differed in their interpretation of the lease terms articulated at the February 20 hearing. Additionally, the trial court found that while Wharton's failure to pay the first $1,500 installment on the settlement by March 1 may have constituted a breach of the settlement agreement, it did not evince the absence of an agreement. Finally, the trial court reasoned that because Wharton ultimately agreed to Barstow's interpretation of the lease terms, and because Barstow never withdrew her proposed lease, a settlement existed.
 {¶ 45} We do not agree with the trial court's reliance upon Wharton's ultimate acquiescence to Barstow's interpretation of the lease terms, because the relevant inquiry before the court was whether an agreement existed between the parties on, not after, February 20. However, we find that the trial court had sufficient evidence before it to determine that the parties intended to be bound by the February 20 agreement. Specifically, the parties halted an ongoing trial to enter their settlement agreement into the record. They orally expressed their intent to be bound. The oral lease contained all the necessary terms. In particular, it contained terms as to price ($500 with 5% annual increases) and as to obligations (triple net). The parties only disputed the meaning of those terms. Thus, sufficient evidence in the record supports a finding that a meeting of the minds occurred.
 {¶ 46} As to Barstow's assertion that time was of the essence, the record reveals that Barstow's own actions caused some of the delay in concluding this case. Barstow did not even present Wharton with a proposed lease until February 28, the day before the first $1,500 installment was due. Later, Barstow called Wharton and asked him not to contact her attorney until she retained a new one.
 {¶ 47} Furthermore, as the trial court noted, while Wharton's delay in tendering the $1,500 may tend to show a breach of the settlement agreement, it does not evince the absence of an agreement. Had Barstow felt that the breach was material, she could have filed a motion to set aside the agreement pursuant to Spercel. Instead, she chose to allow the matter to proceed to a Rulli hearing where the court could consider only the existence of an agreement and the meaning of the terms of the agreement.
 {¶ 48} We find that the record contains sufficient evidence that the parties had a meeting of the minds on February 20. The oral lease agreement outlined its terms with sufficient specificity to evince the parties' intent to be bound, and the trial court was reasonably able to interpret those terms and provide the parties with a fair and just result. Barstow never filed a motion to set aside the settlement agreement. Therefore, we find that the trial court did not err in enforcing the settlement agreement.
 {¶ 49} Accordingly, we overrule Barstow's second assignment of error.
 III. {¶ 50} In her first assignment of error, Barstow contends that the trial court erred in denying her motion for summary judgment. In her third assignment of error, Barstow contends that the trial court erred in finding that no evidence existed that she withdrew her proposed lease. Based upon our resolution of Barstow's second assignment of error, we find these assignments to be moot.
 {¶ 51} Barstow's first assignment of error is moot because we found that she entered into a settlement agreement. Once Barstow entered into a settlement agreement any issues surrounding the trial court's denial of her motion for summary judgment, like all disputes before the court in this case, were resolved by the settlement agreement. Therefore, we find that Barstow's first assignment of error is moot.
 {¶ 52} As to Barstow's third assignment of error, we attach no relevance to the trial court's finding that Barstow never withdrew her proposed lease. That is, once Barstow and Wharton entered into the settlement agreement, Barstow could not unilaterally repudiate it. Mack
at syllabus. She could only have done so via a motion to set aside the agreement pursuant to Spercel. Therefore, the trial court's finding that Barstow never withdrew the proposed lease after February 20 bears no relevance to the outcome of this matter. Regardless of any attempt, short of a Spercel motion, to withdraw the lease, the February 20 agreement was enforceable. Therefore, we find that Barstow's third assignment of error is moot.
 {¶ 53} Because Barstow's first and third assignments of error are moot, we decline to address them. See App.R. 12(A)(1)(c). Accordingly, we affirm the judgment of the trial court.
 {¶ 54} JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Evans, A.J. Concur in Judgment Only.