The STATE ex rel. WAYNE COUNTY CHILD SUPPORT
ENFORCEMENT AGENCY; Keller, Appellant,

v.

TANNER, Appellee.

[Cite as *State ex rel. Wayne Cty. Child Support Enforcement Agency
v. Tanner,* 146 Ohio App.3d 765, 2001-Ohio-1722.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 01CA0013.

Decided Nov. 7, 2001.

766

Raymond E. Leisy, for appellant.

Jeffrey P. Nunnari, for appellee.

---

CARR, Judge.

{¶ 1} Appellant Cheryl Keller appeals from the judgment of the Wayne County Court of Common Pleas, Juvenile Division, granting appellee Gregory Tanner's motion to vacate a prior default judgment and to dismiss a motion for back child support. This court affirms.

{¶ 2} A complaint to determine parentage was filed on January 4, 2000, by the Wayne County Child Support Enforcement Agency on behalf of Cheryl Keller and her child, Sarah Keller, born November 10, 1982. The complaint alleged that Tanner was the father of Sarah Keller, conceived and born in Texas. At the time of the filing of the complaint, Tanner was a resident of the state of New Mexico.

{¶ 3} Service was attempted by certified mail, addressed to "Gregory Steven Tanner, c/o 350 Crawford Blvd., Las Cruces, NM 88005." The receipt was signed by "E. Taggart" on January 20, 2000. Tanner did not file a responsive pleading, nor did he appear at a pretrial conference on February 17, 2000. Keller filed a motion for default judgment on March 1, 2000, and the matter was set for hearing. Notice of the hearing was sent by the trial court to the same address listed above, by regular U.S. Mail, with certificate of mailing. Tanner did not appear for the hearing and, following testimony by Keller, default judgment was entered on April 17, 2000. The trial court found Tanner to be the father of Sarah Keller and established a parent-child relationship.[1]

{¶ 4} Subsequently, on June 30, 2000, Keller, acting pro se, filed a motion[2] for back child support and medical expenses. A hearing on the motion was set for September 28, 2000. On September 25, 2000, Tanner entered an appearance through counsel and requested a continuance of the hearing.

{¶ 5} Following discovery, Tanner filed a motion to vacate the default judgment and to dismiss the petition for back child support and medical expenses, asserting lack of personal jurisdiction and proper service of process. The matter was heard by a magistrate, who denied Tanner's motion. Objections were filed. The trial court found the objections to be well taken and granted Tanner's motion

---

1. Through an administrative proceeding, the parties reached an agreement as to future child support and the agreement was registered with the juvenile court. Tanner was ordered to pay $365.35 per month as current support.

2. This document was styled as a Petition for Back Child Support and Medical Expenses, and the trial court construed it as a motion. For purposes of consistency, this opinion also refers to the document as a motion.

to vacate the order establishing parentage and dismissed the motion for back child support. In so doing, the trial court found that it did not have personal jurisdiction as to the defendant and that the question raised as to perfection of service was moot. Keller has appealed from that order and asserted two assignments of error for review.

### First Assignment of Error

{¶ 6} "The trial court erred as a matter of law in vacating the default judgment."

{¶ 7} The issue presented by this assignment of error is whether the trial court erred in dismissing the paternity action for lack of personal jurisdiction over Tanner.

{¶ 8} The testimony of Keller, presented at a hearing on the motion for default judgment, established that the parties were neighbors since Keller was twelve, and they had dated in Ohio. At the age of twenty-one, Keller moved to Texas and Tanner followed. The subject child was conceived in Texas and the parties lived together in Texas after the child was born. They separated when the child was approximately a year old. They lived apart in Texas for another year before returning to Ohio, where they lived in separate cities. Keller testified that she and the child would visit Tanner on weekends. Approximately four months later, Tanner moved to New Mexico and had no further contact with Keller or the child.

{¶ 9} The power of a state court to exert personal jurisdiction over a nonresident defendant is limited by the Due Process Clause of the Fourteenth Amendment. *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 108–109, 107 S.Ct. 1026, 94 L.Ed.2d 92. Due process requires that in order to subject a nonresident defendant to a judgment in personam, the nonresident must have certain minimum contacts with the forum, such that notions of fair play and substantial justice are not offended by requiring him to defend in that forum. *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. The test for minimum contacts may not be applied mechanically; rather, the facts of each case must be weighed to determine whether sufficient affiliating circumstances are present. *Kulko v. California Superior Court* (1978), 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132, quoting *Hanson v. Denckla* (1958), 357 U.S. 235, 246, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

{¶ 10} In Ohio, that test is met and, therefore, personal jurisdiction may be asserted over a nonresident defendant where one of the circumstances specified in R.C. 2307.382(A), Civ.R. 4.3(A), or R.C. 3111.06(B) has been fulfilled. *Wayne Cty. Bur. of Support v. Wolfe* (1991), 71 Ohio App.3d 765, 769, 595 N.E.2d

421; *Gaisford v. Swanson* (1992), 83 Ohio App.3d 457, 460, 615 N.E.2d 266. Keller concedes that conception of this child did not take place in the state of Ohio. Therefore, R.C. 3111.06(B) does not entitle the common pleas court to exercise personal jurisdiction over Tanner.

{¶ 11} Keller appears to rely upon Civ.R. 4.3(A)(8) and (A)(9) to establish a basis for personal jurisdiction over Tanner. Those sections provide that service of process may be made upon a nonresident defendant and will constitute constitutionally valid in personam jurisdiction for a civil action in Ohio if the defendant who has caused an event to occur out of which the claim that is the subject of the complaint arose is:

{¶ 12} (8) *"Living in the marital relationship within this state* notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state;

{¶ 13} "(9) *Causing tortious injury in this state* to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state[.]" (Emphasis added.)

 {¶ 14} Subsection (8) fails to support Keller's claim as Keller and Tanner never lived in a "marital relationship" in the state of Ohio. Keller proffers a brief argument suggesting that the term "marital relationship" ought also to encompass relationships that result in illegitimate children. This argument ignores the fact that the purpose of the present suit is to *establish* the very paternity which Keller *assumes* by posing this argument. The argument also fails to address the purpose of the long-arm statute, i.e., to guarantee sufficient minimum contacts with the state so that due process is protected. The Ohio Supreme Court has indicated that the requirements of due process are not satisfied where the conception and birth of a child took place in a state other than Ohio, and has held that it would not be "reasonable and fair" for the defendant to conduct his defense in Ohio under those circumstances. *State ex rel. Stone v. Court* (1984), 14 Ohio St.3d 32, 34, 14 OBR 333, 470 N.E.2d 899, quoting *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132. Living in a marital relationship within the forum state is one such criterion toward the satisfaction of due process.

{¶ 15} Furthermore, the record in this case demonstrates that Keller and Tanner did not live together in any sort of relationship within the state of Ohio. Indeed, Keller testified at the hearing in this matter that she and Tanner "never lived in a marital relationship" or "lived together in any form of relationship" within the state of Ohio. Upon these facts, this court cannot conclude that the

parties lived in a marital relationship within this state, and, therefore, jurisdiction may not be based upon Civ.R. 4.3(A)(8).

{¶ 16} Next, the court considers whether subsection (9), causing tortious injury in this state, may be used to obtain personal jurisdiction. Civ.R. 4.3(A)(9). That question has been considered on facts similar to those in the case at bar by the Ohio Supreme Court in *State ex rel. Stone v. Court* (1984), 14 Ohio St.3d 32, 14 OBR 333, 470 N.E.2d 899. In that case, an Ohio mother sought to obtain jurisdiction in the Ohio courts over a resident of Texas where the child was conceived and born in Alabama. The mother sought to base jurisdiction on the alleged tortious failure of the defendant to support his illegitimate child. The court rejected the argument, reasoning that the indicated tortious injury, i.e., failure to support, does not exist unless and until paternity is otherwise established. Id.

{¶ 17} In her brief to this court, Keller argues that when the parties returned to Ohio, they "lived together again on the weekends." The record does not so state. Instead, the record reflects that Keller and Tanner lived separately in Ohio, and that she and the child "visited" with him on weekends for approximately four months until he moved out of state. Keller then asks the court to *assume* that during those visits, Tanner helped support the child by providing shelter and food, and that he acted as a parent and helped with the personal needs of the child. Keller apparently contends that such activity constitutes support and that the cessation of this activity is sufficient to constitute "tortious injury" for purposes of Civ.R. 4.3(A)(9).

{¶ 18} First, this court cannot assume testimony that is not present in the record. Second, the support indicated by Keller's testimony in this case—even allowing the requested assumptions—is not the type of support, the cessation of which may be termed a "tortious injury." The facts in this case are not of such "quality and nature" that it is "reasonable and fair" to require Tanner to conduct his defense in Ohio. See *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132. Third, the Ohio Supreme Court has indicated that there must be a formal support order in place, and consequently a prior determination of paternity, before the violation of a support order may constitute a "tortious injury." *State ex rel. Stone,* 14 Ohio St.3d at 33, 14 OBR 333, 470 N.E.2d 899. See, also, *Hostetler v. Kennedy* (1990), 69 Ohio App.3d 299, 304, 590 N.E.2d 793. Therefore, personal jurisdiction over Tanner may not be grounded on Civ.R. 4.3(A)(9).

{¶ 19} Accordingly, the first assignment of error is overruled.

Second Assignment of Error

{¶ 20} "The decision of the trial court to vacate the default judgment violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and Article I, [Section] 2 of the Constitution of the state of Ohio."

{¶ 21} Keller contends that Civ.R 4.3(A)(8), allowing for personal jurisdiction to be asserted on the basis of a "marital relationship," discriminates against children born out of wedlock. She claims, therefore, that the holding of the trial court violates equal protection of the law, in that an Ohio court may assert personal jurisdiction over a nonresident to obtain a support order in the case of a legitimate child.

{¶ 22} This is not a question of equal protection. The suit hypothesized by Keller presupposes a determination of paternity, as well as the existence of a marriage. Those factors supply due process criteria that do not exist in the present suit, which is only now seeking to establish paternity.

{¶ 23} Further, Civ.R 4.3(A)(8) does not prohibit long-arm jurisdiction over putative fathers of illegitimate children as opposed to legitimate children. Rather, the focus of the rule is upon due process and minimum contacts in the forum state. In a situation such as the case at bar, where the parties did not live in a marital relationship in the state of Ohio either before or after the birth of the child, and the child was not conceived or born in the state of Ohio, there simply are not sufficient contacts to satisfy due process.

{¶ 24} Finally, Keller claims that this procedure creates an "impenetrable barrier," forbidden by *Gomez v. Perez* (1973), 409 U.S. 535, 538, 93 S.Ct. 872, 35 L.Ed.2d 56, depriving illegitimate children of the equal protection of the law, as opposed to children born to a married couple. Keller, however, is not deprived, by the present action, of the right to bring her suit in an appropriate forum. This decision establishes only that personal jurisdiction may not be obtained over Tanner by the Ohio courts on the basis of these facts. See *Massey–Norton v. Trammel* (1989), 61 Ohio App.3d 394, 397, 572 N.E.2d 821.

{¶ 25} Keller's second assignment of error is, therefore, without merit.

{¶ 26} Accordingly, finding no merit in either of Keller's two assignments of error, the judgment of the trial court is affirmed.

Judgment affirmed.

SLABY, P.J., and WHITMORE, J., concur.