**RITA ANN DISTRIBUTORS, Appellee,**

v.

**BROWN DRUG COMPANY, Appellant.**

[Cite as *Rita Ann Distrib. v. Brown Drug Co.*, 164 Ohio App.3d 145, 2005-Ohio-5786.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2005 CA 12.

Decided Oct. 28, 2005.

146

148

Eric F. Spade, for appellee.

Jerome M. Strozdas, for appellant.

WOLFF, Judge.

{¶ 1} Brown Drug Company ("Brown Drug") appeals from a judgment of the Clark County Court of Common Pleas, which afforded full faith and credit to a default judgment rendered by a Maryland court in favor of Rita Ann Distributors ("Rita Ann") and against Brown Drug.

{¶ 2} Rita Ann is a division of AmerisourceBergen Corporation, which has its principal place of business at 8410 Kelso Drive in Baltimore, Maryland. Brown Drug operated a chain of discount drug stores under the trade name "Drug Castle" until closing its stores in April 2002.

{¶ 3} In September 2000, Brown Drug completed a credit application and began to purchase certain products, primarily cosmetics, from Rita Ann. The credit application showed Rita Ann's preprinted address and telephone number in Baltimore; an Ohio facsimile number was handwritten on the application. Brown Drug faxed the application to Earl Jones, an account manager for Rita Ann who worked from his home office in Massillon, Ohio.

{¶ 4} From September 2000 to early 2002, Jones periodically assisted Brown Drug in ordering goods from Rita Ann. According to Kirk Box, a vice-president of Brown Drug, Jones would visit the Drug Castle stores periodically. While at

the stores, Jones would refill displays and restock the shelves. Jones would then cause an invoice to be generated for the additional product that he had furnished. When certain products remained unsold, Jones would remove them from the stores and credit the cost of those products back to Brown Drug. Brown Drug did not operate any stores in Maryland or make any sales in Maryland. Brown Drug employees did not travel to Maryland for any purpose related to Rita Ann. Rather, Rita Ann's agents and employees sold product to Brown Drug by visiting the stores and offices in Ohio or by taking orders over the telephone.

{¶ 5} According to Jones, the representatives of Brown Drug with whom he dealt knew that Rita Ann was located in Baltimore and that Brown Drug was conducting business with Rita Ann in Baltimore. The payments made by Brown Drug for the goods that it had ordered from Rita Ann were sent to Rita Ann in Baltimore. Jones further indicated that representatives of Brown Drug understood that the credit application that they completed in September 2000 had to be approved by Rita Ann in Baltimore.

{¶ 6} On September 16, 2002, Rita Ann brought suit against Brown Drug in the Circuit Court for Baltimore County, Maryland, alleging that Brown Drug had not paid several invoices from February through April 2002. Rita Ann served the complaint by certified mail, return receipt requested. Although the parties corresponded regarding the lawsuit, Brown Drug did not file an answer to the complaint. Consequently, Rita Ann sought a default judgment, which was granted. On June 5, 2003, the circuit court entered judgment against Brown Drug in the amount of $30,925.36.

{¶ 7} On June 25, 2004, Rita Ann filed the Maryland judgment with the Clark County Court of Common Pleas. On July 22, 2004, Brown Drug filed an "Objection to the Filing of Foreign Judgment and Motion to Dismiss," arguing that the judgment was void because Brown Drug had not been properly served by Rita Ann and the Maryland court lacked personal jurisdiction over the company. On January 13, 2005, the court of common pleas concluded that Brown Drug had been properly served and that the Maryland court had properly exercised personal jurisdiction over the company. The court therefore ordered that the Maryland judgment be afforded full faith and credit.

{¶ 8} In its sole assignment of error, Brown Drug claims that the trial court erred in failing to find that the Maryland judgment was void. We agree.

{¶ 9} Ohio's Uniform Enforcement of Foreign Judgment Act, R.C. 2329.021 through 2329.027, sets forth this state's obligations under the Full Faith and Credit Clause of the United States Constitution. "The doctrine of full faith and credit requires that the state of Ohio give to these acts, records, and judicial proceedings of another state the same faith and credit 'as they have by law or

usage in the courts of such State * * * from which they are taken.' " *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 132, 712 N.E.2d 713. R.C. 2329.022 provides:

{¶ 10} "A copy of any foreign judgment * * * may be filed with the clerk of any court of common pleas. The clerk shall treat the foreign judgment in the same manner as a judgment of a court of common pleas. A foreign judgment filed pursuant to this section has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in same manner as a judgment of a court of common pleas."

{¶ 11} A valid judgment rendered in a foreign jurisdiction will be recognized and enforced in Ohio even though the strong public policy of Ohio would have precluded recovery in its courts on the original claim. *Speyer v. Continental Sports Cars, Inc.* (1986), 34 Ohio App.3d 272, 276, 518 N.E.2d 39. A foreign judgment is subject to collateral attack in Ohio only if there was no subject-matter or personal jurisdiction to render the judgment under the law of the foreign state. *Litsinger Sign Co. v. Am. Sign Co.* (1967), 11 Ohio St.2d 1, 40 O.O.2d 30, 227 N.E.2d 609; *Reyna v. Escobar,* Seneca App. No. 13–04–39, 2005-Ohio-424, 2005 WL 280355, ¶ 10.

{¶ 12} Brown Drug contends that the trial court improperly found that the Maryland court had personal jurisdiction over the company. First, Brown Drug asserts that it was not properly served with summons in accordance with the Maryland law. It further argues that it lacked minimum contacts with Maryland so that Maryland courts could not exercise personal jurisdiction over it under the long-arm statute and the Due Process Clause.

{¶ 13} "When a court's personal jurisdiction is properly challenged * * *, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence. See generally 2A Moore's Fed. Prac. ¶ 12.07[2.–2]. If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when * * * the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. Id. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

credibility, and draw the most favorable inferences for the existence of jurisdiction. Id." *Combs v. Bakker* (C.A.4, 1989), 886 F.2d 673, 676.

{¶ 14} "Service of process is a method of formally commencing an action by giving the defendant notice of the action." *CPI Corp. v. Seasonings Etcetera, Inc.* (June 8, 2000) Franklin App. No. 99AP–590, 2000 WL 739437. "It is an elementary principle that no valid proceeding can be had against a person until he has been notified of the proceeding by proper summons, unless he voluntarily waives such constitutional right." *Harvey v. Slacum* (1942), 181 Md. 206, 210, 29 A.2d 276.

{¶ 15} Maryland Rule of Civil Procedure 2–121 sets forth the procedures for service of process in the circuit court. The general service-of-process provision authorizes service within the state of Maryland "or, when authorized by the law of this State, outside of this State * * * by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.'" Md. Civ.R. 2–121(a). Service outside of Maryland may also be made as prescribed by the court or prescribed by the foreign jurisdiction "if reasonably calculated to give actual notice." Id. Service is made upon a corporation by serving its resident agent, president, secretary, or treasurer. Md.Civ.R. 2–124(d). "A proper return of service serves as prima facie evidence of valid service of process." *Pickett v. Sears, Roebuck & Co.* (2001), 365 Md. 67, 84, 775 A.2d 1218, citing *Sheehy v. Sheehy*, 250 Md. 181, 185, 242 A.2d 153, 155 (1968); see, also, *Harvey*, 29 A.2d at 278.

{¶ 16} Brown Drug asserts that it was not properly served under Maryland law because Rita Ann failed to request "Restricted Delivery," and the certified-mail receipt was signed by Cindy Foster, an individual who was not associated with Brown Drug. We need not decide, however, whether Rita Ann's service of Brown Drug complied with the general requirements of Md.Civ.R. 2–121(a) for in-state defendants. It is apparent that Brown Drug, an out-of-state defendant, was served by a method prescribed by Ohio, the foreign jurisdiction, and in a manner "reasonably calculated to give actual notice." Md.Civ.R. 2–121(a); *Miserandino v. Resort Properties, Inc.* (1997), 345 Md. 43, 691 A.2d 208.

{¶ 17} In Ohio, Civ.R. 4.1(A) and Civ.R. 4.3(B) provide that service of parties "shall be by certified or express mail unless otherwise permitted by these rules" as "[e]videnced by return receipt signed by any person." The rules require the clerk to "affix adequate postage and place the sealed envelope in the United States mail as certified or express mail return receipt requested with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered." Id. The Supreme Court of Ohio has held that

service of process by certified mail under Civ.R. 4 is consistent with due process standards when it is reasonably calculated to give interested parties notice of a pending action. *Mitchell v. Mitchell* (1980), 64 Ohio St.2d 49, 18 O.O.3d 254, 413 N.E.2d 1182. The Maryland Court of Appeals has likewise indicated that service by certified mail comports with due process. *Miserandino,* supra (holding that service of process by first-class mail was not constitutionally sufficient to confer personal jurisdiction over foreign defendant, despite fact that such service was authorized under Virginia's long-arm statute).

{¶ 18} The delivery of the certified mail to someone other than the defendant need not be restricted to a person authorized by appointment or by law to receive service of process for the defendant. *Mitchell,* 64 Ohio St.2d at 51, 18 O.O.3d 254, 413 N.E.2d 1182. A corporation may be served within the meaning of Civ.R. 4 when the summons and complaint are delivered by certified mail to the usual place of business of the corporation, even when they are not specifically addressed to an officer or agent of that corporation. *Samson Sales, Inc. v. Honeywell, Inc.* (1981), 66 Ohio St.2d 290, 20 O.O.3d 277, 421 N.E.2d 522.

{¶ 19} In the present case, it is undisputed that Rita Ann sent the complaint and summons to Brown Drug's registered agent, Patricia S. Brown, by certified mail, return receipt requested, at 810 East High Street, Springfield, Ohio, 45505. The return receipt indicated that the mail was delivered to "Cindy Foster." Although Richard Brown has stated in his affidavit that Cynthia Foster was neither employed by nor affiliated with Brown Drug, there is no evidence that Cynthia Foster was not an agent of Patricia Brown, the statutory agent. We presume from Foster's presence at Patricia Brown's office that she was authorized to sign for Brown, and the returned receipt is prima facie evidence that service was proper. *Mitchell,* supra; see, also, *Academy of IRM v. LVI Environmental Serv., Inc.* (1997), 344 Md. 434, 447, 687 A.2d 669 ("Simply because delivery was made to a person other than the officer identified on the receipt or in the summons does not mean that service was invalid and personal jurisdiction was lacking"). Thus, we conclude that service on Brown Drug was proper.

{¶ 20} Next, Brown Drug asserts that the Maryland court lacked personal jurisdiction over it under the long-arm statute and due process.

{¶ 21} Under Maryland law, a court may exercise personal jurisdiction over an out-of-state defendant if the exercise of jurisdiction is authorized under Maryland's long-arm statute and the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Beyond Sys.,* 388 Md. 1, 878 A.2d 567; *Lamprecht v. Piper Aircraft Corp.* (1971), 262 Md. 126, 130, 277 A.2d 272. Maryland's long-arm

statute states that nonresidents may be subject to jurisdiction if, among other considerations, they directly or by an agent transact any business or perform any character of work or services in Maryland. Md.Code Section 6–103 of the Courts and Judicial Proceedings Article. The reach of the long-arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the United States Constitution. *Beyond Sys., Inc.,* supra; *Lamprecht,* 277 A.2d at 275. Consequently, the long-arm-statute inquiry merges with the due process analysis. *Beyond Sys., Inc.,* supra; *Mohamed v. Michael* (1977), 279 Md. 653, 656, 370 A.2d 551.

{¶ 22} The United States Supreme Court has stated that the exercise of personal jurisdiction over a nonresident defendant comports with due process if the foreign defendant has "minimum contacts" with the forum state such that to require the defendant to defend its interests in the forum state "does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278; *Hall v. Tucker,* 161 Ohio App.3d 245, 257, 2005-Ohio-2674, 829 N.E.2d 1259, ¶ 26; *Beyond Sys., Inc.,* supra.

{¶ 23} The standard for determining whether a foreign defendant is subject to personal jurisdiction in the forum state depends on whether the suit arises from the defendant's contacts in the forum state. If the defendant's contacts with the forum state are not the basis for the suit, then personal jurisdiction over the foreign defendant comports with due process only if the defendant's contacts are "substantial" and "continuous and systematic." *Youn v. Track, Inc.* (C.A.6, 2003), 324 F.3d 409; *Beyond Sys., Inc.,* supra. If the action arises from the defendant's contacts in the forum, the defendant must be subject to specific personal jurisdiction. Specific personal jurisdiction is established when (1) the nonresident defendant has purposefully availed itself of the privilege of conducting activities in the forum state, (2) the plaintiff's claims arise out of those activities directed at the forum state, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Youn,* 324 F.3d at 418, citing *S. Machine Co. v. Mohasco Industries, Inc.* (1968), 401 F.2d 374, 381; *Fritz–Rumer–Cooke Co. v. Todd & Sargent* (Feb. 8, 2001), Franklin App. No. 00AP–817, 2001 WL 102267; *Beyond Sys., Inc.,* supra.

{¶ 24} Because there are no allegations that Brown Drug had continuous and systematic contacts with Maryland, we are concerned with whether the Maryland court properly exercised specific personal jurisdiction over Brown Drug.

{¶ 25} In *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, the United States Supreme Court discussed the contours of the "purposeful availment" requirement:

{¶ 26} "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State. Thus where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

{¶ 27} "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." (Emphasis sic.) Id. at 475–476, 105 S.Ct. 2174, 85 L.Ed.2d 528.

{¶ 28} In determining whether a contractual relationship established minimum contacts, the court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id., 471 U.S. at 479, 105 S.Ct. 2174, 85 L.Ed.2d 528. In our judgment, Brown Drug did not purposefully direct its activities to Maryland, as Rita Ann alleges. Although Brown Drug and Rita Ann developed an ongoing relationship that lasted for approximately 18 months, none of Brown Drug's efforts concerning that relationship were conducted in Maryland. Brown Drug completed the credit application in Ohio and sent it to Rita Ann's agent in Ohio. According to Richard Brown, Rita Ann sold its products to Brown Drug by visiting Castle Drug stores in Ohio or by taking orders over the telephone. Kirk Box indicated that Rita Ann's representative, Earl Jones, would visit the stores periodically and, while there, would refill displays, restock shelves, and remove unsold product from the stores. Brown Drug did not travel to Maryland for any purpose related to its business with Rita Ann. Although Brown Drug may have

been aware that Rita Ann was located in Baltimore, Maryland, and that the products were shipped from Maryland, Brown Drug did not *itself* establish contacts with Rita Ann in Maryland. Rather, the primary contacts between Ohio and Maryland were between Earl Jones, Rita Ann's local account manager, and Rita Ann's offices in Baltimore. Such unilateral activity cannot be imputed to Brown Drug. Finally, although Brown Drug sent payments to Maryland, we find that contact to be insufficient to establish minimum contacts such that Brown Drug would reasonably anticipate being haled into court in Maryland. Accordingly, we conclude that the Maryland court lacked personal jurisdiction over Brown Drug.

{¶ 29} The assignment of error is sustained.

{¶ 30} The order of the trial court granting full faith and credit to the Maryland judgment is reversed.

Judgment reversed.

FAIN and DONOVAN, JJ., concur.