**WOOD, Appellant,**

v.

**FLIEHMAN et al., Appellees.**

[Cite as *Wood v. Fliehman*, 193 Ohio App.3d 454, 2011-Ohio-2101.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA2010–09–012.

Decided May 2, 2011.

Ostrowski Law Firm Co., L.P.A., and Andrea G. Ostrowski, for appellant.

Thomas G. Eagle, for appellees.

POWELL, Presiding Judge.

{¶ 1} Plaintiff-appellant, Nancy Wood, appeals a decision of the Preble County Court of Common Pleas granting the motion of defendant-appellees, Lee Fliehman and Ashley Fliehman, née Rossing, to dismiss or vacate an action to enforce a default judgment obtained in Missouri on the ground that the Missouri court lacked personal jurisdiction over appellees. For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2} Appellant is a resident of Missouri. Appellant owned a mare that she wished to breed during the 2009 breeding season. Appellees are both residents of Ohio. Appellees operated a horse-breeding business under the trade name of Kinwalker Stables. In furtherance of its business, appellees placed advertisements on the Internet offering the breeding services of their stallion. Appellant saw one of appellees' advertisements online and contacted appellees by e-mail to inquire into their breeding services. Appellees and appellant exchanged several e-mails, and eventually the parties reached an agreement for the breeding of appellees' stallion to appellant's mare by means of artificial insemination for the price of $515. In January 2009, appellees mailed appellant the "Breeding Agreement and Transported Semen Agreement." On January 11, 2009, appellant executed and mailed back the contract, along with the required deposit fees. On January 15, 2009, upon receiving the agreement and deposit fees from appellant, Rossing signed the agreement for appellees.

{¶ 3} From January to June 2009, the parties continued to correspond by both e-mail and telephone in order to arrange the shipment of semen. Appellant paid the remaining balance on the contract and contacted appellees to have the semen shipped during a time when her mare was in heat. Appellant claims that appellees shipped the semen late, and when it arrived, it was allegedly unsafe for use.

{¶ 4} Thereafter, appellant filed suit against appellees in the Circuit Court of St. Francois County, Missouri, for breach of contract and violation of the

Missouri Merchandising Practices Act. Although served with a summons, appellees failed to file an answer or otherwise respond to the suit. Default judgment in the amount of $8,572.94 was entered against appellees in December 2009.

{¶ 5} On April 27, 2010, appellant brought an action to enforce the foreign judgment by filing an authenticated copy of the Missouri judgment in the Preble County Court of Common Pleas. Upon receiving notice, appellees responded by simultaneously filing an answer and a motion to dismiss or vacate the foreign judgment. Appellees argued that the Missouri judgment was void because appellees did not have sufficient contacts with the state of Missouri to permit the Missouri court's exercise of personal jurisdiction over them. On August 4, 2010, after holding an evidentiary hearing on the matter, the trial court granted appellees' motion to dismiss or vacate the foreign judgment. The trial court found that appellees did not have sufficient minimum contacts with Missouri to satisfy due process. In reaching its decision, the court declined to discuss Missouri's long-arm statute on the ground that even if the long-arm statute would allow the exercise of jurisdiction, exercising that jurisdiction would violate due process. Appellant filed a timely appeal.

{¶ 6} Assignment of error No. 1:

{¶ 7} "The trial court erred when it granted [appellees'] motion to dismiss or vacate the foreign judgment."

{¶ 8} In her first assignment of error, appellant argues that the trial court erred in finding that the Missouri court lacked personal jurisdiction over appellees because appellees' conduct satisfies the Missouri long-arm statute and creates sufficient minimum contacts to satisfy due-process requirements. Appellant maintains that the trial court erred in failing to discuss Missouri's long-arm statute. Appellant further contends that the court erred in failing to apply Missouri law in its due-process analysis.

{¶ 9} Pursuant to the Full Faith and Credit Clause of Section 1, Article IV, United States Constitution, Ohio courts must recognize the validity of a foreign judgment rendered by a court of competent jurisdiction. *Wyatt v. Wyatt* (1992), 65 Ohio St.3d 268, 269, 602 N.E.2d 1166. A foreign judgment may be collaterally attacked, however, if the foreign court's exercise of personal jurisdiction was either not authorized by the foreign court's internal law or if the assertion of jurisdiction violated the Due Process Clause of the Fourteenth Amendment. *Litsinger Sign Co. v. Am. Sign Co.* (1967), 11 Ohio St.2d 1, 4, 40 O.O.2d 30, 227 N.E.2d 609. A judgment rendered by a court that lacks jurisdiction over the person is void. *CompuServe, Inc. v. Trionfo* (1993), 91 Ohio App.3d 157, 161, 631 N.E.2d 1120.

{¶ 10} " 'When a court's personal jurisdiction is properly challenged * * * the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.' " *Rita Ann Distrib. v. Brown Drug Co.*, 164 Ohio App.3d 145, 2005-Ohio-5786, 841 N.E.2d 400, ¶ 13, quoting *Combs v. Bakker* (C.A.4, 1989), 886 F.2d 673. We review the trial court's ruling granting a motion to dismiss or vacate for lack of personal jurisdiction pursuant to a de novo standard of review. *Buflod v. Von Wilhendorf, L.L.C.*, Warren App. No. CA2006–02–022, 2007-Ohio-347, 2007 WL 210790, ¶ 10.

{¶ 11} To determine whether a court has personal jurisdiction over a nonresident, it must engage in a two-step analysis. "First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." (Footnote omitted.) *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183–184, 624 N.E.2d 1048.

{¶ 12} "A state's long arm statute or equivalent civil rule provides the basis upon which the exercise of personal jurisdiction is authorized by state law. * * * The interpretation of the applicable long arm statute or civil rule must be determined by application of the forum state's law." *Hack v. Fisher–Bord Worldwide Moving*, Summit App. No. 20914, 2002-Ohio-3863, 2002 WL 1758384, ¶ 11.

{¶ 13} Missouri's long-arm statute provides the basis for the assertion of personal jurisdiction over appellees. Mo.Rev.Stat. 506.500 provides:

{¶ 14} "1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

{¶ 15} "(1) The transaction of any business within this state;

{¶ 16} "(2) The making of any contract within this state;

{¶ 17} "(3) The commission of a tortious act within this state * * *."

{¶ 18} Even assuming the validity of appellant's contention that the breeding contract was made in Missouri,[1] which would then place appellees within the

---

1. Appellant contends that the breeding contract was made within the state of Missouri because that is where she accepted and signed the contract. Appellees contend, however, that the

reach of Missouri's long-arm statute, the Missouri court could not properly exercise jurisdiction over appellees because of due-process requirements.

{¶ 19} The Due Process Clause of the Fourteenth Amendment requires that a nonresident defendant have sufficient minimum contacts with the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528. Minimum contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528. Jurisdiction is therefore proper when the contacts proximately result from actions by the defendant himself that create such a substantial connection with the forum state that he could reasonably anticipate being haled into court there. Id. Accordingly, random, fortuitous, or attenuated contacts are not sufficient to establish minimum contacts with the forum state. Id.

{¶ 20} To determine whether a nonresident defendant has made sufficient minimum contacts with the state of Missouri, the court may consider five factors: "1) the nature and quality of the contacts; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience to the parties." *Consol. Elec. & Mechanicals, Inc. v. Schuerman* (Mo.App.2006), 185 S.W.3d 773, 776. "The first three factors are of primary importance and the last two are of secondary importance." *Mead v. Conn* (Mo.App.1993), 845 S.W.2d 109, 112.

{¶ 21} After reviewing the specific circumstances of this case, we find that appellees did not have sufficient minimum contacts with Missouri to satisfy due-process requirements. The manner in which the contractual relationship between the parties was formed suggests that appellees did not intend to create a substantial connection with the forum state. It was appellant who initiated appellees' contact with the forum state, not vice versa. Appellees did not purposefully direct their Internet advertisement towards residents of Missouri; they simply responded to an inquiry by a Missouri resident.

{¶ 22} Further, the quantity, nature, and quality of appellees' contacts were insufficient to constitute a substantial connection with Missouri. Missouri courts

---

contract was made in Ohio. "This was literally a sale conducted by an Ohio resident, from Ohio, and in Ohio, which just happened to be with a Missouri resident." Regardless of where the contract was entered into, a disputed issue we need not and do not decide, the facts fail to demonstrate that appellees had sufficient minimum contacts with Missouri to satisfy due-process requirements.

have consistently held that the mere use of interstate facilities, such as telephones, mail, or facsimile machines, are "secondary or ancillary factors which 'cannot alone provide the minimum contacts required by due process.'" *Schuerman*, 185 S.W.3d at 777, quoting *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.* (C.A.8, 1995), 53 F.3d 920, 923; *TSE Supply Co. v. Cumberland Natural Gas Co.* (Mo.App.1983), 648 S.W.2d 169, 170. In the case at bar, appellees' only contacts with the state of Missouri occurred when they exchanged e-mails with appellant, telephoned appellant, and mailed the breeding contract and the semen to appellant in Missouri. Absent evidence of some other connection to Missouri, we cannot find that appellees had a substantial connection to that state.

{¶ 23} Our holding is supported by numerous Missouri cases in which the nature and number of contacts were far greater than in the present case, and yet were ruled insufficient to meet due-process requirements. In *Johnson Heater Corp. v. Deppe* (Mo.App.2002), 86 S.W.3d 114, a Wisconsin resident made several phone calls to a Missouri corporation before entering into a contract for the purchase of a heating, ventilation, and air-conditioning system. Even though the Wisconsin resident sent numerous faxes, mailings, and payments to the Missouri corporation, the Missouri court of appeals found insufficient contacts to satisfy due-process requirements. In *Farris v. Boyke* (Mo.App.1996), 936 S.W.2d 197, the Missouri court of appeals found that although respondents, residents of Illinois, had been physically present in Missouri on at least four different occasions, had made several dozen phone calls to Missouri, and had sent numerous facsimiles and letters to Missouri, respondents did not have such a substantial connection to the forum state that they could have anticipated being haled into court there. In *Elaine K. v. Augusta Hotel Assoc. Ltd. Partnership* (Mo.App.1993), 850 S.W.2d 376, a Missouri company initiated contact with a Georgia hotel for accommodations. Even though the Georgia hotel had placed several telephone calls to the Missouri company, had mailed brochures to Missouri, and had sent a letter to the Missouri company detailing the agreed room-rental terms, the Missouri court of appeals found that the contacts were insufficient to satisfy due-process requirements.

{¶ 24} The facts before us fail to demonstrate that appellees had sufficient minimum contacts with Missouri that the traditional notions of fair play and substantial justice would be satisfied. The trial court did not err in granting appellees' motion to dismiss or vacate the Missouri judgment for lack of personal jurisdiction. Accordingly, appellant's first assignment of error is overruled.

{¶ 25} Assignment of error No. 2:

{¶ 26} "The trial court erred when it allowed Ashley N. Rossing to testify to information of which she had no personal knowledge."

{¶ 27} In her second assignment of error, appellant argues that Rossing's testimony regarding Fliehman's contacts with the state of Missouri was improper because it called for speculation. Appellant contends that because Rossing did not have personal knowledge of Fliehman's contacts, she was an incompetent witness, and the trial court therefore erred when it overruled her objection to Rossing's testimony at the evidentiary hearing. Appellant maintains that the court erred in granting Fliehman's motion to dismiss or vacate the foreign judgment because it considered Rossing's testimony when the testimony should have been excluded.

{¶ 28} "Since matters of jurisdiction are often not apparent on the face of the summons or pleadings, evidentiary hearings are an appropriate vehicle for resolving such issues. In deciding the merits of the defense, the court may hear the matter on affidavits, depositions, interrogatories, or receive oral testimony. * * * If an evidentiary hearing is conducted, plaintiff has the burden of proving jurisdiction by a preponderance of the evidence." *Friedman v. Speiser, Krause & Madole, P.C.* (1988), 56 Ohio App.3d 11, 13–14, 565 N.E.2d 607.

{¶ 29} Before a witness may testify at an evidentiary hearing, the court must be able to infer that the witness is competent and has personal knowledge of that to which he or she testifies. *Starinchak v. Sapp,* Franklin App. No. 04AP–484, 2005-Ohio-2715, 2005 WL 1303212, ¶ 28. A trial court has wide discretion in determining whether a witness is competent to testify, and an appellate court will not disturb a trial court's ruling absent an abuse of discretion. Id. at ¶ 27. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 30} Evid.R. 602 provides: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Personal knowledge is defined as " '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.' " *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26, quoting Black's Law Dictionary (7th Ed.Rev.1999) 875.

{¶ 31} The following colloquy took place at the evidentiary hearing:

{¶ 32} "[APPELLEES' ATTORNEY]: * * * What was your relationship with Lee Fliehman, the other defendant in this case?

{¶ 33} "[ROSSING]: He was my husband.

{¶ 34} "[APPELLEES' ATTORNEY]: All right. And he is not any more?

{¶ 35} "[ROSSING]: Correct.

{¶ 36} "[APPELLEES' ATTORNEY]: At the time that the stuff [the horse semen] was sold to Nancy Wood, were you married to Lee [Fliehman]?

{¶ 37} "[ROSSING]: Yes.

{¶ 38} "[APPELLEES' ATTORNEY]: How long have you been married to Lee [Fliehman]?

{¶ 39} "[ROSSING]: Uh, a couple of months.

{¶ 40} "[APPELLEES' ATTORNEY]: All right. During the time, to your knowledge, during the time you were married to him, did he have any contacts at all with Missouri, different than yours, that you already testified to?

{¶ 41} "[APPELLANT'S ATTORNEY]: Objection, Your Honor, calls for speculation.

{¶ 42} "[THE COURT]: It is overruled.

{¶ 43} "[APPELLEES' ATTORNEY]: The answer ma'am?

{¶ 44} "[ROSSING]: What was the question again, I'm sorry?

{¶ 45} "[APPELLEES' ATTORNEY]: Yes, to the best of your knowledge, during the time that you were married to him or otherwise, did he have any contacts with Missouri different than yours that you've already testified to?

{¶ 46} "[ROSSING]: No."

{¶ 47} The manner in which appellees' counsel inquired about Fliehman's contacts with Missouri specifically limited Rossing's testimony to those observations that she personally made or perceived throughout the course of her relationship with Fliehman. Because Rossing's testimony was limited to the scope of her personal knowledge, the trial court acted within the bounds of its discretion in overruling appellant's objection and admitting the testimony. The court was entitled to consider Rossing's testimony in deciding appellees' motion to dismiss or vacate the foreign judgment. Appellant's second assignment of error is therefore overruled.

Judgment affirmed.

BRESSLER and RINGLAND, JJ., concur.