[Cite as *Vadasz v. Vadasz*, 2011-Ohio-5223.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| JESSICA VADASZ, et al. | C.A. No. 10CA0084-M |
| Appellees | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| JOHN VADASZ, et al. | COURT OF COMMON PLEAS<br>COUNTY OF MEDINA, OHIO |
| Appellants | CASE No. 08CIV2189 |

DECISION AND JOURNAL ENTRY

Dated: October 11, 2011

Moore, Judge.

**{¶1}** Appellant, Nicholas Vadasz, appeals the judgment of the Medina County Court of Common Pleas. This Court reverses and remands for proceedings consistent with this opinion.

I.

On June 6, 2006, Appellees, Jessica Vadasz, Stephanie Vadasz, and Allison Vadasz, filed suit in the Circuit Court of the Twentieth Judicial Circuit of Florida against Appellant, Nicholas Vadasz, and his father as co-trustees of the Mary S. Vadasz Living Trust. Mary Vadasz was Appellant's grandmother. On August 29, 2006, the Florida court entered default judgment against Appellant. Appellees filed a motion for final judgment, and on September 12, 2008, the Florida court entered judgment against Appellant and his father in favor of Appellees in the amount of $523,759.08. On December 4, 2008, Appellees filed in the Medina County Court of Common Pleas an affidavit with a certified copy of the Florida judgment and a "precipe for certificate of judgment lien." On December 9, 2008, notice of the filing of the foreign judgment

was sent to John Vadasz, Appellant's father and co-trustee. A certificate of foreign judgment was issued against both John Vadasz and Appellant on January 23, 2009.

{¶2} On October 15, 2009, Appellant moved to vacate this foreign judgment because his name was not listed on the praecipe, and he did not have notice of its filing. An oral hearing was held before the magistrate on November 24, 2009, and the magistrate recommended that the trial court vacate the foreign judgment entered against Appellant. On December 14, 2009, the trial court vacated the certificate of foreign judgment against Appellant and reissued the certificate of foreign judgment solely against John Vadasz.

{¶3} Appellees subsequently filed new instructions for service in order to have the foreign judgment reissued against Appellant. On December 30, 2009, Appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B) and a motion to deny full faith and credit recognition to the void foreign judgment. Specifically, he argued that the foreign judgment should not be certified because Florida did not have personal jurisdiction over him. Appellees filed a response to the motions on January 5, 2010, and Appellant filed a reply to this response on January 12, 2010.

{¶4} On April 8, 2010, an oral hearing was held before the magistrate. Thereafter, both parties submitted final closing arguments and proposed findings of fact and law. On May 17, 2010, the magistrate issued a decision denying Appellant's Civ.R. 60(B) motion and finding the foreign judgment against Appellant enforceable in Ohio. Appellant filed objections to the magistrate's decision on May 27, 2010. On June 24, 2010, an oral hearing was held regarding Appellant's objections. On June 30, 2010, the trial court adopted the magistrate's decision in full and separately entered judgment.

{¶5}     Appellant timely filed a notice of appeal.  He raises two assignments of error for our review.  We have rearranged Appellant's assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR II**

"THE TRIAL COURT ERRED IN FINDING THE APPELLANT HAD SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF FLORIDA, IN PARTICULAR THAT THE APPELLANT'S RECREATIONAL VISITS TO THE STATE OF FLORIDA WERE SUFFICIENT TO GIVE FLORIDA PERSONAL JURISDICTION OVER THE APPELLANT."

{¶6}     In his second assignment error, Appellant argues that the trial court erred in adopting the magistrate's finding that he had sufficient minimum contacts to give Florida personal jurisdiction over the Appellant.  We agree.

{¶7}     Ohio's Uniform Enforcement of Foreign Judgments Act, R.C. 2329.021 through 2329.027, sets forth this state's obligations under the Full Faith and Credit Clause of the United States Constitution.  "The doctrine of full faith and credit requires that the state of Ohio give to these acts, records, and judicial proceedings of another state the same faith and credit 'as they have by law or usage in the courts of such State * * * from which they are taken.'" *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 132.

{¶8}     However, "[a] foreign judgment is subject to collateral attack in Ohio * * * if there was no subject-matter or personal jurisdiction to render the judgment under the law of the foreign state."  *Rita Ann Distrib. v. Brown Drug Co*., 164 Ohio App.3d 145, 2005-Ohio-5786, at ¶11, citing *Litsinger Sign Co. v. Am. Sign Co*. (1967), 11 Ohio St.2d 1; *Reyna v. Escobar*, 3d Dist. No. 13-04-39, 2005-Ohio-424, at ¶10.  "A judgment rendered by a court that lacks jurisdiction over the person is void."  *Wood v. Fliehman*, 193 Ohio App.3d 454, 2011-Ohio-2101, at ¶9, citing *CompuServe, Inc. v. Trionfo* (1993), 91 Ohio App.3d 157, 161.

{¶9} This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, at ¶9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049–M, 2009–Ohio–3139, at ¶ 18. We review a trial court's determination of personal jurisdiction, including whether a nonresident defendant had the requisite minimum contacts with a forum state, under a de novo standard of review. *Hack v. Fisher-Bord Worldwide Moving*, 9th Dist. No. 20914, 2002-Ohio-3863, at ¶8.

{¶10} In determining whether a state court has personal jurisdiction over a nonresident, the court must conduct a two-step analysis. "First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction[.]" *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 183-184. Second, the court must also determine whether the defendant has sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316.

{¶11} Appellant does not contest the application of the Florida Long Arm Statute. Instead, he argues that he does not have sufficient minimum contacts with the state to satisfy the Due Process Clause of the Fourteenth Amendment. "The question of whether the assertion of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment is governed by federal law." *Durkin v. Gran Turismo Jaguar* (Dec. 17, 1999), 11th Dist. No. 98-L-101, at *4, See, also, *Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 2005-Ohio-4930, at ¶26.

{¶12} To determine whether Appellant had minimum contacts with the forum state, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, citing *Internatl. Shoe Co.*, 326 U.S. at 316. There is a requirement of purposeful availment to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." (Citations omitted). *Burger King Corp.*, 471 U.S. at 475. Once this is established, this Court must also determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Id., quoting *Internatl. Shoe Co.*, 326 U.S. at 320. "The test for minimum contacts may not be applied mechanically; rather, the facts of each case must be weighed to determine whether sufficient affiliating circumstances are present." (Citations omitted.) *State ex rel. Wayne Cty. Child Support Enforcement Agency v. Tanner* (2001), 146 Ohio App.3d 765, 768.

{¶13} In Appellant's Civ.R. 60(B) motion, he argued that the underlying judgment was void because the state of Florida lacked personal jurisdiction over him. Appellant further argued that he never submitted to the jurisdiction of the state of Florida because he was not represented by counsel in Florida, did not respond to the pleadings or motions filed in that state, and did not present any evidence to the Florida court. In addition, he did not have the requisite minimum contacts with Florida to give that court personal jurisdiction over him. His supporting affidavit averred that his only connection with Florida was that he was named co-trustee of a living trust in Florida, a position he neither accepted nor acted under. Instead, all activities with regard to the trust were handled by his father, acting as co-trustee. In addition, he never spoke with anyone regarding his duties as co-trustee, and had no knowledge of his duties or responsibilities with respect to the beneficiaries.

{¶14} "Once a defendant has challenged the trial court's personal jurisdiction over him or her, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence." (Internal citations and quotations omitted.) *ComDoc v. Advance Print Copy Ship Ctr.*, 9th Dist. No. 24212, 2009-Ohio-2998, at ¶3. Appellees failed to submit any affidavits with their response to contradict Appellant's arguments. Although Appellees failed to submit any evidence in response to Appellant's motion, the trial court chose to conduct a hearing.

{¶15} Much of the testimony elicited at the hearing was vague. Appellant concedes that he was named co-trustee of his grandmother's trust, but avers that he did not personally participate in the administration of the trust. The trust was created in 1991, and there were approximately five co-trustees at that time. Thereafter there were approximately five amendments to the trust. Throughout those years, Appellant and his father remained trustees. When asked if he knew his responsibilities as co-trustee, he responded "I had an idea, but my dad said he would take care of everything, I didn't have to worry about it."

{¶16} The hearing established that Appellant was physically present in Florida in 2003 for vacation with his family, that he has never been in Florida other than while on vacation, that the trust concerned real estate in the state of Florida, that in Ohio he signed a trust deed conveying Florida property, and that from Ohio he sent a letter to his father in Florida in 2006 questioning his father's actions with regard to the trust. The trial court determined that Appellant's "physical presence within the State of Florida in various years is sufficient minimum contact to negate any constitutional personal jurisdiction limitations."

{¶17} Upon review, we conclude that Appellees failed to meet their burden of proving jurisdiction by a preponderance of the evidence. Id. Although many courts have held that terms of the trust document or the intent of the settlor may govern jurisdiction, Appellees failed to

make the trust documents a part of the record below. See *Norton v. Bridges* (1983), 712 F.2d 1156, 1161. Testimony at the hearing failed to reveal whether the trust instrument was explicit as to the intended jurisdiction. Many courts have held that, "[i]n the case of an inter vivos trust where the administration of the trust is fixed in a particular state, the courts of that state will exercise jurisdiction." Id. at 1160, quoting *Restatement (Second) of Conflict of Laws* §267 reporter's note (rev.ed.1971). Here, the plaintiffs failed to present any evidence regarding the place of administration of the trust. The *Norton* court further noted that it "is neither the actual physical location of the trust assets nor whether the trust is inter vivos or testamentary" that is dispositive of jurisdiction, but rather the fact that the "trust was not administered in the state claiming jurisdiction." Id. at 1161. Although there is testimony that there were trust assets located in the state of Florida, there is no testimony as to the administration of the trust assets. In addition, where, as here, the "named trustee is an individual, * * * it is less certain that his or her domicile at any particular time reflects the intent of the settlor to fix that forum as the place of administration." Id. The burden was on the plaintiff-Appellees to provide the trial court with evidence regarding the administration of the trust, and none is in the record.

{¶18} In *Hanson v. Denckla* (1958), 357 U.S. 235, a Pennsylvania settlor created an inter vivos trust and named a Delaware trust company as trustee. The settlor subsequently moved to Florida, and after her death, the will was admitted to probate there. The United States Supreme Court held that Florida lacked personal jurisdiction over the trust company, stating: "We fail to find such [minimum] contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail." Id. at 251. Here, no evidence was presented and the

testimony at the hearing failed to reveal the circumstances of the trust's creation, where the co-trustees or settlor resided at the time of creation, or what assets were involved and where those assets were held or administered.

**{¶19}** Testimony from the hearing avers that the trust concerned at least one piece of real property in the state of Florida. It does not disclose the place of creation or whether the settlor was a resident of Florida at the time of creation. Furthermore, "[t]he fact that the trust [may have been] created in [Florida] by a [Florida] settlor is not, by itself, dispositive." *Norton*, 712 F.2d at 1161, citing *Cocke v. Duke University* (1963), 260 N.C. 1. Instead, the place of registration of the trust is more significant. Id. The place of registration of the trust also was not made a part of the record. The burden was on Appellees to prove jurisdiction in the trial court, and they failed to submit any evidence in support of this contention.

**{¶20}** The record indicates that Appellant's only contacts with the state of Florida were family vacations many years earlier, the signing in Ohio of one deed at the direction of his father, and the sending from Ohio of a letter to his father inquiring about his actions with regard to the trust. These are precisely the sort of "'random,' 'fortuitous,' or 'attenuated' contacts" that the Fourteenth Amendment protects against. *Burger King Corp.*, 471 U.S. at 475. It is not foreseeable that these contacts would put Appellant on notice that he "should reasonably anticipate being haled into court there." Id., quoting *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295. Concluding otherwise would "offend traditional notions of fair play and substantial justice." *Internatl. Shoe Co.*, 326 U.S. at 316.

**{¶21}** Appellant's second assignment of error is sustained. We conclude that the Florida court lacked personal jurisdiction over Appellant. As such, the judgment was void. See *Compuserve, Inc.*, 91 Ohio App.3d at 161. Accordingly, we reverse the judgment of the Medina

Court of Common Pleas and remand the matter to the trial court to deny full faith and credit to the Florida judgment.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN FINDING THAT OHIO CIV. RULE 60(B) IS NOT A PROPER MECHANISM FOR VOIDING A FOREIGN JUDGMENT FOR LACK OF JURISDICTION, AND FOR DENYING FULL FAITH AND CREDIT RECOGNITION TO THAT FOREIGN JUDGMENT."

{¶22} In his first assignment of error, Appellant maintains that the filing of a Civ.R. 60(B) motion was the proper mechanism for voiding a foreign judgment. However, in light of our disposition of Appellant's second assignment of error, we need not address this first assignment of error as it is rendered moot.

### III.

{¶23} Appellant's second assignment of error is sustained. His first assignment of error is rendered moot. The judgment of the Medina County Court of Common Pleas is reversed and the matter is remanded with instructions for the trial court to deny full faith and credit to the judgment of the Circuit Court of the Twentieth Judicial Circuit of Florida.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CONCURS, SAYING:

{¶24} I concur. The transcript of the hearing that took place totals sixteen pages. The questions asked are often vague and imprecise, leading to answers which are often ambiguous and difficult to interpret. For example, Appellant was asked if he "participate[d] in the proceedings in Florida to remove [his] father as principal trustee[.]" Appellant did not affirmatively answer this question but did acknowledge that "[w]e tried to remove him, yes." Aside from not actually stating he participated in "the proceedings," the nature or type of "proceedings" is not further clarified, nor is Appellant's participation discussed in any detail apart from an acknowledgment by Appellant that he was in Ohio and "sent documents to Florida[.]" And, while there is testimony indicating that the trust "was in Florida[]" and "concerns real estate that was in the State of Florida," it is unclear what precisely that means. The trust itself is not part of the record, and it is unclear whether the trust was created in Florida, was to be governed under Florida law, or whether the trust included property located in other

states in addition to Florida. In addition, there is no information in the record concerning the place of administration or registration of the trust. Further, Appellant specifically testified that he did not personally participate in the administration of the trust and that he has never been to Florida other than on vacation. He has no businesses or offices there, no employment or employees there, and no property there. He testified that he believed that his father was handling the trust. From the transcript, it appears that Appellant's contacts with Florida are limited to signing a trustee's deed, a related contract for sale of property, and sending a letter to his father in Florida about the trust. I cannot say that due process concerns have been met. Accordingly, I concur.

CARR, J.
DISSENTS, SAYING:

{¶25} I respectfully dissent. I would conclude that Appellant had minimum contacts with the state of Florida so as to establish personal jurisdiction in conjunction with the undisputed application of Florida's long-arm statute. Appellant admitted at the hearing to signing the deed which was the subject matter of the underlying lawsuit in Florida. He admitted to conducting activity, specifically signing deeds and other papers, having to do with his responsibilities as a trustee of the Florida trust. In addition, Appellant admitted to having participated in proceedings in Florida to remove his father as the principal trustee of the trust. I would not characterize these acts as mere "random, fortuitous, or attenuated contacts," as does the majority. Rather, I would conclude that Appellant took a proactive role in regard to his position as a co-trustee. Furthermore, Appellant's alleged conduct which gave rise to the money judgment against him in the Florida court would constitute committing a tortious act within that State. See F.S.A. 48.193(1)(b). Appellant's execution of a Florida deed allowing for the sale of

trust property created the liquidated trust asset which Appellant was found to have improperly converted. Therefore, Appellant's conduct subjected him to the jurisdiction of the Florida courts pursuant to that state's long-arm statute, see F.S.A. 48.193(1)(b), and formed the basis of activity sufficient to give rise to minimum contacts with that state for purposes of due process. I would affirm the trial court's judgment.

APPEARANCES:

TIMOTHY N. TOMA and SHANNON MCCORMICK, Attorneys at Law, for Appellant.

STEPHEN J. BROWN, Attorney at Law, for Appellee.